

1 | Melvin T. Sharpe, Jr. Esquire
msharpeesq@aol.com
Attorney for Ricky D. Ross a/k/a Rick Ross
2 | PA Attorney ID Number 43312
2836 West Harold Street
3 | Philadelphia, PA 19132
Tel.(267) 514-7289/Fax (310) 400-7240

4

5 | Jeff Berke, Esquire, POLK & BERKE
jeffberke@yahoo.com
Attorney for Ricky D. Ross a/k/a Rick Ross
6 | SBN No.
11620 Wilshire Blvd., Suite 800
7 | Los Angeles, CA 90025
Tel.(310) 235-2009/Fax (310) 235-2029
8 | Local Counsel



FILED
CLERK, U.S. DISTRICT COURT

JUN 18 2010

CENTRAL DISTRICT OF CALIFORNIA
BY                      DEPUTY

9

10 | THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA
11 | WESTERN DIVISION – LOS ANGELES

12

13 | RICKY D. ROSS, an individual,
also known as RICK D ROSS, also
14 | known as FREEWAY RICK ROSS
15 | Plaintiff,

16 | vs.

17

18 | WILLIAM LEONARD ROBERTS,
II, an individual, also known as
19 | doing business as, performing as,
trading as a rapper and businessman
20 | by the name RICK ROSS;
MAYBACH MUSIC GROUP, DEF
21 | JAM RECORDINGS, LLC, also
known as ISLAND DEF JAM
22 | MUSIC, a Delaware Limited
Liability Company; SHAWN
23 | CARTER, an individual, also known
as JAY-Z, individually, and as the
24 | former President of DEF JAM
MUSIC; UMG RECORDINGS,
25 | INC. also known as UNIVERSAL
MUSIC GROUP , A Delaware
26

27

28

CV No. 10 4528 PA (RZx)

COMPLAINT FOR:

**COMMON LAW; FEDERAL
TRADEMARK VIOLATIONS;
DILUTION; UNFAIR
COMPETITION;
MISAPPROPRIATION OF NAME;
FALSE ENDORSEMENT &
ADVERSTISING; RIGHT TO
PUBLICITY/PRIVACY; FEDERAL
43a AND LANHAM ACT
VIOLATIONS, CONSPIRACY AND
TORTIOUS INTERFERENCE
WITH BUSINESS RELATIONS;
NEGLIGENCE; UNJUST
ENRICHMENT, FRAUD,
COMPENSATORY, PUNITIVE
AND TREBLE DAMAGES,
INTEREST, LEGALS FEES,
COSTS OF SUIT; F.R.CIV.P &
U.S.C.D. L.R. 65 INJUNCTIONS,**

| | |
|---|---|
| corporation and subsidiary of VIVENDI UNIVERSAL; SLIP-N-SLIDE RECORDS; and DOES 1 through 100, inclusive.<br><br>Defendants. | **ACCOUNTING OF DEFENDANTS' GROSS EARNINGS FROM USING PLAINTIFF'S NAME; PERMANENT INJUNCTIONS, AND FURTHER EQUITABLE RELIEF, ASSET FREEZE, NAME CHANGE ORDER, CONSTRUCTIVE TRUST; AND RETROACTIVE DAMAGES ORDER** |

NOW comes Plaintiff Ricky D. Ross a/k/a "Rick Ross", an adult U.S. citizen and resident of the State of California living in Los Angeles County, who files this verified Complaint and demand for judgments as a pro se Plaintiff, against Defendants William Leonard Roberts II, an individual, d/b/a and t/a "Rick Ross", Maybach Music Group a fictitious entity, DEF JAM RECORDINGS LLC, a Delaware LLC, Shawn Carter a/k/a "Jay-Z", an individual, UMG RECORDINGS, INC., also known as UNIVERSAL MUSIC GROUP a DE corporation, Slip-n-Slide Records, Jane and John Does all whom unlawfully used and exploited Plaintiff's name, persona, and its value, for their unlawful benefit in commerce and interstate commerce and who infringed on Plaintiff's trademark, name and rights, and used RICK ROSS' name without his consent, and the U.S. Patent and Trademark Office rendered a "final refusal" to William Roberts in his attempts to register a trademark for the name Rick Ross,

and Defendants made millions of dollars exploiting RICK ROSS' name in commerce, without Plaintiff's consent, so Plaintiff seeks Lanham Act trademark protection, immediate injunctive relief, and money damages, for Defendants' exploitation of his RICK ROSS name from 2006 to present and their refusal to "cease and desist" from using Plaintiff's name in commerce, and Defendants' continued violations of 15 U.S.C. 1091 et seq., the Lanham Act, federal, state and common law, and equity, Federal Rules of Civil Procedure, and US Central District Local Rules:

1.      Plaintiff RICKY D. ROSS, born Ricky Donnell Ross also known as "RICK ROSS" and "Freeway Rick Ross", is an individual USA citizen and resident of the State  of California residing in Los Angeles County at 1252 Turmont Street, Carson, CA 90746 as Plaintiff used his name first in commerce and never abandoned his name.

2.      Defendant WILLIAM LEONARD ROBERTS II, also known as, doing business as and trading in interstate commerce as "RICK ROSS", is an individual USA citizen and resident of the State of Florida residing in Dade County at 1750 Northwest 193rd Street, Opalocka, FL 33056, and  Defendant Roberts was user of Plaintiff's mark.

3.      Defendant MAYBACH MUSIC GROUP, is a music company, label, with a principal place of business in the State of Florida, at 10398 Laurel

Road, Davie, FL 33328, and allegedly distributed by Defendant DEF JAM and/or UNIVERSAL, that is, was, or in some degree created, named, operated, owned and controlled by Defendant Roberts, which company was allegedly formed in 2008 before Defendant Roberts released his third studio LP, "Deeper Than Rap", on the upstart Maybach Music Group label, a symbol of Defendant Roberts major-league success in music after his first album titled "Career Criminal" but later changed to "Port of Miami", was commercially successful, and his second LP "Trilla" sold 500,000+ RIAA units and debuted at the top of Billboard music charts.

4.     Defendant DEF JAM RECORDINGS, INC. is a Delaware corporation and a major record label with its principal place of business in Los Angeles County, CA, at 2220 Colorado Street, Santa Monica, CA 90404, and at all times relevant hereto, Def Jam was the top selling, most important rap music label in music history and Def Jam music, and artists, were distributed by Defendant UNIVERSAL MUSIC GROUP, and DEF JAM has corporate offices and does business in Los Angeles and New York,  and in interstate commerce, and DEF JAM got engaged directly in the "RICK ROSS" project in 2005 or 2006, and Def Jam contracted with knowledge of its legal duty to uphold intellectual property owners' rights, which duty DEF JAM, and its key employees, violated for commercial gain, proximately causing harm to Plaintiff.

5.     Defendant SHAWN CARTER, also known as hip hop music artist and businessman trading as "Jay-Z", is an individual USA citizen and a resident of the State of New York, with a business address at 6 West 25th Street, 39th Floor, New York, NY 10010, and Defendant Carter a/k/a Jay-Z signed Defendant Roberts while President of DEF JAM and at all times relevant hereto, Defendant Carter engaged in RICK ROSS business with Defendants and Roberts, and Shawn Carter gained financially from using RICK ROSS' name, and he established himself as a successful rap music industry executive as a result of his RICK ROSS activities.

6.     Defendant UNIVERSAL MUSIC GROUP (referred to herein as "UMG", "Universal") is a Delaware for-profit corporation, and a subsidiary of VIVENDI UNIVERSAL, its parent company and is a major corporation doing business in interstate commerce, and commerce, with a principal place of business in the U.S. in Los Angeles, CA, at 2220 Colorado Street, Santa Monica, CA 90404 and at all times relevant hereto UMG was or is the world's main distributor of content and music and the primary financial backer for DEF JAM on RICK ROSS musical projects from 2006 to present, and UMG engaged in a course of conduct, and pattern of practices, that infringed on and violated Plaintiff's rights, plus UMG financed the branding of Roberts as "RICK ROSS' by UMG authorizing use of Plaintiff's name, and persona, to further the career

and commercial interests of the Defendants, and Roberts as RICK ROSS, and as distributor, UMG was responsible for clearing, verifying, and authorizing use of any name in commerce by all music artists under contract with Universal.

7.     Defendant SLIP-N-SLIDE RECORDS is a rap music company or label allegedly doing business in Miami, Florida, with its principal place of business in Miami Beach, FL at 919 Fourth Street, 33139, and at all times relevant hereto Slip-N-Slide Records, prior to 2006, was the small record label that Defendant Roberts had signed with, after Defendant Roberts ended his alleged agreement with Suave House Records, a small Southern label, and Slip-N-Slide Records was the company Defendant Roberts was affiliated with, when he signed with Def Jam/UMG, in 2006.

8.     JANE or JOHN DOE Defendants are individuals, companies and/or corporations that aren't known or named, but Plaintiff may amend this Complaint if necessary, when they learn the identity of the Doe Defendants 1-10, and Plaintiff believes, based upon inquiry reasonable under the circumstances, that Defendants above and the Doe Defendants, were acting on behalf of themselves, or as authorized agents of the primary Defendants with respect to the conduct alleged in this Complaint.

9.     This Court has in persona jurisdiction over Plaintiff and the

Defendants  involved in this lawsuit, by virtue of their federal actions and business in the state of California and interstate commerce, subjecting them to California law, and California's Long–Arm Statute at Cal. Civ. Proc. Section 410.10 which states, "Jurisdiction. Basis. Court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state, or of the United States…", and many of the unlawful commercial actions at issue occurred in California and involve the Lanham Act of 1946, and interstate commerce, and Defendants engaged in unlawful acts and commerce worldwide using Plaintiff's name, plus Defendants caused, and are causing, Plaintiff harm publicly in music and within California.

10.    This Court has original jurisdiction of the subject matter under 28 U.S.C. 1331 & 1338, federal question, trademark and unfair competition actions under US law, and 28 U.S.C. 1332, diversity of jurisdiction matters, between citizens of different states, involving federal and related state claims, arising out of the same set of facts and transactions, and the amount in controversy for each cause or count against the Defendants exceed $100,000 exclusive of interest and costs.

11.    This Court has supplemental jurisdiction, under 28 U.S.C. Section 1367(a) or 1367(b), over Plaintiff's common law, federal, state, and statutory claims at law and in equity, claims so related to claims within the original

jurisdiction of this Court that they form part of the same case or controversy under Article III of the U.S. Constitution, and they constitute acts not in the public domain.

12.     Venue before this Court is proper pursuant to 28 U.S.C. 1391(b) as stated, in the Western Division of this Court, sitting in Los Angeles County, CA, which district has sufficient and minimum contacts with Defendants, due to their music and name use activities engaged in involving Plaintiff's name, in this district, and this district is a principal place of business and work site for Defendants.

13.     The applicable statutes of limitations have not expired, and claims made herein are brought within the time required given Plaintiff's discovery of harm, not discoverable earlier due to a lack of notice, and Plaintiff's incarceration.

14.     At all times relevant hereto, Defendants were not authorized by Plaintiff, Ricky D. Ross a/k/a RICK ROSS, to use his name or identity for their commercial benefit, but despite a lack of consent, Defendant Roberts began to use the name RICK ROSS after 1995 when Plaintiff was sent to federal prison, and at that time Plaintiff  used his RICK ROSS name in"unlawful" commerce since 1980.

15.     In 1995, Defendant Roberts was a college freshman at Albany State

U., GA who dropped out after a year then became employed as a full-time Dade County FL Corrections Officer in 1996 for almost 2 years, a fact Roberts denied publicly, when confronted by online urban media sites about his correctional officer past, and Roberts lied about being a C.O. until proof of his employment was produced, and Roberts misrepresented publicly he had a criminal past, false and misleading representations of past facts likely to cause confusion, and deceive the public as to his affiliation with Plaintiff, who objected to Roberts' use of his name.

16.     In 2006, and all times relevant hereto, Def Jam was controlled by Chairman Antonio "LA" Reid" and then President Shawn Carter who conspired with Defendants to commercially exploit Plaintiff's name, and prior criminal image, for Roberts' benefit and use, and promoted William Roberts as "Rick Ross", by exploiting the name's commercial value with the Black, urban crime, rap, entertainment "public" and investing millions in RICK ROSS' name which brought attention to Roberts and  helped to establish him as "RICK ROSS" the rising star, after Def Jam/UMG outbid other music labels to sign Roberts to his big record deal, and in furtherance of their contract, Def Jam/UMG intentionally, maliciously in bad faith infringed on and misappropriated Plaintiff's name and image, because Def Jam and UMG financed Roberts' use of Plaintiff's name, and falsely  represented Roberts as RICK ROSS.

17. In 2006, Defendant Roberts was signed to a major record deal by DEF JAM/UMG and Jay-Z, based on the buzz of his hit record "Hustlin" about Roberts being a major drug dealer named "RICK ROSS", which multi-million dollar investment by DEF JAM/UMG reaped huge profits for Defendants, and they made Roberts into a music star, but Defendants' marketing of Roberts as Rick Ross the ex-drug dealer, was false.

18. Roberts is now known as rapper and businessman RICK ROSS because he stole Plaintiff RICK ROSS' name and drug dealer identity, and persona, by using "Rick Ross" as his name commercially, and in entertainment, because of its popularity in Black crime, community, rap and urban media circles but Defendants unlawfully used Plaintiff's name without consent as Roberts' name in music and in commerce, confusing and deceiving that "public" about Roberts' affiliation with Plaintiff.

19. Plaintiff Ricky D. Ross, a/k/a "Rick Ross", was the reputedly former major West Coast drug dealer from Los Angeles, CA, who allegedly made his name in the illegal drug trade in the urban communities of CA, and other major US cities, in the 1980's and 1990's, reportedly creating a major drug enterprise, and amassing illegally millions of dollars, before his arrest, prosecution and incarceration in 1995 by federal officials, and Plaintiff's exploits and reputation earned him celebrity status and instant name recognition

as a Black inner-city crime legend amongst his peers, the "urban crime" public
and law enforcement, and as a result Plaintiff's story became nationally known
when he was linked to the CIA's "Iran-Contra" infamous political scandal
involving the U.S. military, corrupt foreign governments, drug cartels, guns,
wars, and politics, during President Reagan's administration, that led to a
congressional investigation by Rep. Maxine Waters into the influx of drugs and
guns to poor U.S. urban communities from Asia, and South America, resulting
in the infamous testimony of U.S. Colonel Oliver North, and media expose' by
Gary Webb of the CIA's involvement in 'America's drug war'.

20.    Plaintiff Ricky D. Ross, a/k/a "Rick Ross" continuously and openly
used his real family name and his nickname Rick Ross even while he allegedly
engaged in criminal acts up to 1995, and Rick Ross' name was used
interchangeably with Ricky Ross, and he still uses both names daily and has
used both in commerce in regards to the 2001 movie about his life "100
KILOS", in his current occupation as a motivational speaker to youth, ex-
offenders, and in entertainment matters since 1996, when his lawful name use in
commerce began, and Plaintiff's name has gained value and goodwill since 1995
when he was sent to federal prison, and Mr. Roberts and Defendants exploited
Plaintiff's name for its good commercial value.

21. Defendants wrongfully appropriated and exploited Plaintiff's name for its criminal, entertainment and commercial value, because RICK ROSS' name as known in rap music and Black criminal culture and to many his name is famous.

22. At all times relevant hereto, Defendant Shawn Carter represented that he was a drug dealer in the 1980's and 1990's before becoming a major top rap star, and he talked about his drug dealer past on TV and records, and as President of Def Jam by 2006, Carter knew or should've known about or been aware of Rick Ross and his crime story, his past reputation for being a major kingpin from LA, and popularity in the Black community in the 1980s and 90s, and Black Entertainment TV series called "American Gangster" chronicled the story of "Freeway Rick Ross" and Carter released his album "American Gangster" after the TV project released.

23. In 2006, Carter individually, and as President of DEF JAM, helped Def Jam secure the musical services of Defendant Roberts and sign him to his major deal, and in 2006, Jay-Z publicly stated that "Rick Ross' signing was one of his top priorities at Def Jam" since Def Jam was historically rap music's primary label but by 2006, Def Jam's portfolio of top-selling rap artists had diminished, and Def Jam had fully diversified its artist portfolio, with non-rap music artists.

24.     Def Jam and Universal's major commercial investment in
Defendant Roberts, under the name "Rick Ross", which Defendant Carter
supported by signing Roberts for millions after the bidding war, made Roberts
Def Jam's top 2006 rap project, and proved Carter's value as a successful
corporate music business executive for which Mr. Carter received executive
compensation, bonuses, and/or stock options, as a result of his successful work
on the "Rick Ross" project while President of Def Jam, which earnings and
profit Plaintiff demands a just share of as damages.


25.     Defendants Def Jam/UMG knew, or should've known the name
Rick Ross because the name was popular in Black crime and law enforcement,
and in 2006 the trailer for "Black Entertainment Television" cable series
"American Gangster", featuring Plaintiff RICK ROSS' story on the show was
released nationally in the mainstream media, but Defendants, DEF JAM and
UMG never contacted Plaintiff about his name, and chose to support Roberts'
illegal exploitation and use of Plaintiff's name.

26.     Defendants Def Jam Recordings and UMG knew, or should've
known, that they had an ethical, legal duty to investigate the legality of using
Plaintiff's name in commerce, as they planned to use RICK ROSS' name to
promote Roberts, but they invested millions in the name and failed to honor their

fiduciary and legal duty to clear use of the name, and given the "final refusal" by the USPTO, Defendants unlawfully engaged in commerce, and wrongfully exploited RICK ROSS' name knowing they had no rights to, directly causing financial harm to Plaintiff by said use.

27.     Defendants DEF JAM and UMG Recordings, Inc. intentionally violated their fiduciary duty of care owed to intellectual property rights holders, the public, and Plaintiff, by profiting off Rick Ross's name in commerce, and depriving the Plaintiff intentionally and maliciously of any compensation from use of his name while Defendants made millions off Plaintiff's name while he was in prison, plus Def Jam avoided three 2006 letters from Plaintiff's attorney, giving then notice to "cease and desist" use, and that Plaintiff objected to their use of his name.

28.     Defendants branded Roberts Rick Ross anyway misusing Plaintiff's name and identity in the rap music industry, the Black community, and urban crime public, and they used Roberts' false drug dealer image with Plaintiff's name in commerce and caused Plaintiff irreparable harm, and they continue to cause harm to Ross' name, not limited to past, present and future economic loss but including mental and emotional harm, confusion, dilution and diminished capacity to use his name.

29.     Defendants dominated the use of Plaintiff's name while he was in prison, and in 2006, Plaintiff hired a lawyer to contact Defendants regarding their use of his "Rick Ross" name and image in the rap music industry without his consent, which letters the lawyer sent but Defendant Def Jam never responded to 3 letters requesting Defendants cease use in October-November, 2006 and Defendants actions and omissions have caused irreparable harm to Plaintiff and to Plaintiff's name.

30.     Plaintiff's attorney sent Def Jam and UMG his May 19, 2010 "cease" letter, with a "litigation hold" notice of potential litigation, under Rule 26, Federal Rules of Civil Procedure, based on Plaintiff's discovery of Defendants' unlawful conduct as individuals and/or in their corporate capacities and Defendants' past and present infringement and future intention to infringe upon Plaintiff's name, but Def Jam and UMG never responded to Plaintiff's 2010 good faith letter, just as in 2006 when Plaintiff hired a lawyer to contact Defendant Def Jam by letters California attorney Crystal Miller O'Brien sent letters to Def Jam's New York office to put Def Jam on notice of Plaintiff's objection to Defendants' name use in 2006, but Defendants continued their unlawful name use and false misrepresentations, and ignored all Plaintiff's letters, misconduct that was willful and malicious.

## COUNT I - COMMON LAW AND FEDERAL TRADEMARK AND TRADENAME INFRINGEMENT

**Plaintiff v. Defendant Roberts and all Defendants individually and jointly**

31.    Plaintiff Ricky D. Ross a/k/a "RICK ROSS" incorporates by reference all of the prior averments made in Paragraphs 1 through 30, as if set forth at length.

32.    Plaintiff Ricky D. Ross a/k/a "Rick Ross" is the original and lawful owner of his birth name and his abbreviated and trademark nickname "RICK ROSS", which is the real name he has always used his entire life, as a young tennis player, in his past criminal life allegedly as a businessman in the illegal drug trade, and Plaintiff continues to use his "Rick Ross" name since his 1995 imprisonment to the present, and he's known as Rick Ross, Ricky Ross, and Freeway Ricky Ross.

33.    Under US federal trademark law at 15 U.S.C. Section 1051 et seq., 1127(a), a trademark is defined, in relevant part, as "any word, **name**, symbol, device, or any combination thereof, used to identify and distinguish his or her goods… from those… sold by others and to indicate the source of the goods even if the source is unknown…" and trademarks need not be registered but they must be used lawfully in commerce.

34.    A trade name is defined in common law and 15 U.S.C. 1127 as "any name used by a person to identify his or her business or vocation…" and

Plaintiff used his name in commerce but unlawfully as a major drug dealer from 1980 to 1995 and his name was well known in the drug trade and by law enforcement and segments of the urban crime, rap and Black community because he did business as Rick Ross, until he was arrested, prosecuted, and incarcerated in federal prison, but in 1999 in prison, Plaintiff first used his name lawfully in commerce regarding the "100 KILOS" movie.

35.    Plaintiff Ricky D. Ross a/k/a "Rick Ross" is sole owner of his trade name and his unregistered trademark which is his nick name, Rick Ross, and Plaintiff's trademark and trade name has acquired a secondary meaning, since it is clearly identified with his past life as an alleged major drug dealer, and such secondary meaning is proven from use of his name in commerce and interstate drug prosecutions in federal/state criminal courts, and formal congressional hearings into drugs and crime in American cities in the 1980's and 1990's, but since said use in commerce wasn't 'lawful' Rick Ross' first lawful name use in commerce was the 1999 movie "100 KILOS", a copy of which is attached hereto as Exhibit 1(two pages).

36.    A personal name may be protected as a trademark if it acquires a secondary meaning, and Plaintiff Rick Ross' name acquired a secondary meaning by 1996, at least ten (10) years before Defendants' first use in commerce in 2006.

37.     Plaintiff established his RICK ROSS trademark and trade name by engaging in unlawful drug commerce in California from 1980 to 1995, and after 1995, he no longer engaged in unlawful commerce, and he used his name lawfully in commerce from 1999 to the present, in February, 1999, he formally authorized a movie about his life using his name Ricky Ross, his first lawful use in commerce.

38.     Plaintiff was reportedly known in Los Angeles law enforcement and criminal circles as a major drug kingpin until 1995, and amongst his peers, Ross established his real name as his trade name in commerce for more than fifteen (15) years, ten (10) years before Defendant Roberts and other Defendants' 2006 use, an Ross used his trademark and trade name competitively in commerce years prior to Defendants using his name to create the false character and rap identity Defendant Roberts created and named after Plaintiff, and Plaintiff "Rick Ross" never granted, assigned or authorized use of his name, trademark or image to Defendants.

39.     Use of a mark in interstate commerce, in a manner which is likely to cause confusion to the public, as to origin or source of goods or services, gives rise to an action for trademark infringement, and Defendants uses of Plaintiff's name in music is likely to cause confusion to the public, as to the

origin and/or source of entertainment services, and Roberts' use gives rise to
trademark infringement actions against Defendants for wrongful uses of
Plaintiff's name, and Defendants as named and unnamed Defendants, who acted
in concert with each other or Roberts and unlawfully used, exploited, and
fraudulently used Plaintiff Rick Ross' name, image and reputation for the value
associated with Rick Ross' name, in commerce, are liable to Plaintiff for willful
violations of Plaintiff's trademark, name, and rights, for which Plaintiff seeks
protection, and Lanham Act remedies.

40.     A trademark owner can prevent others from using his mark in
commerce by proving such use is likely to mislead the public as to the source or
origin of goods or services in commerce, or prior use in commerce, and Plaintiff
alleges Defendants and Roberts actions misled the public as to the source or
origin of services in commerce, which source or origin all flowed directly from
Plaintiff.

41.     At some time after 1995, when Defendant Roberts was a college
student, or after he became a correction officer in 1996, at around the same time
Plaintiff Ricky D. Ross a/k/a "RICK ROSS" was finally incarcerated for his
illegal drugs activities in interstate commerce, Defendant Roberts allegedly
claimed, used or began exploiting and misappropriating Plaintiff's Rick Ross
trademark and name, using Plaintiff's name **and** "drug dealer" image publicly as

his "rap" name, and Roberts did so with the purpose to commercially exploit the name's value in the rap music industry, by linking his rap image with Plaintiff's criminal past, reputation and image for the value associated with Plaintiff's name.

42.    Plaintiff's common law, federal trademark and "Rick Ross" trade name, was infringed upon and violated by Defendant William Leonard Roberts, II, who trades as, did business as and performed as the ex-drug dealing rapper named Rick Ross, fraudulently with intent to knowingly deceive the public about his true non-drug correctional and law enforcement background, and Defendants joined the scheme by bankrolling him using Roberts' false Rick Ross name and image in commerce, which name was well known in criminal, drug and law enforcement circles that Defendant Roberts either knew of, worked in, or could have learned about while in college, in the rap music culture that emulates and idolizes urban criminals and dealers, in the Black community, or from his correctional officer employment in 1996, or any time thereafter when Plaintiff was in prison, but his name was in the news.

43.    Defendants William Leonard Roberts, II individually and Defendants, acted to intentionally and infringed upon, used and controlled Plaintiff's trademark and name.

44.    Beginning in August, 2006, Defendant Roberts by and through his

attorneys, attempted to register with the U.S. Patent and Trademark Office

(USPTO) by filing an application for registration of a mark, the "RICK ROSS"

name three (3) times, then tried it again January 14, 2009, using RICK ROSS'

name with his silhouetted facial image in black with a beard, moustache and

shaded glasses on white, three (3) more times, for a total of six (6) attempted

registrations, however none of Defendants' attempted "RICK ROSS"

registrations were approved by the USPTO after a final refusal of the "name"

registrations by the USPTO, and an initial refusal of the most recent 2009 name

and image registrations but no final determination.  A copy of the "USPTO

TESS Search Results" for "RICK ROSS", pages 1 thru 21, have been attached

hereto and incorporated by reference herein, as Plaintiff.'s Exhibit "A".

    45.    Defendant Roberts and the named Defendants who signed

Defendant Roberts to his major record deal early in 2006 should've known about

trademark applications filed by or for Defendant Roberts or participated jointly

in Roberts' attempt to register Plaintiff's name as Roberts' trade name, which

conduct was intentional, tortious, malicious, sinister, and done in bad faith with

full knowledge of law, and such conduct, after the USPTO's initial refusal to

approve registrations of the name, shows there was willful infringement that

invokes Lanham Act damages.

    46.    Defendants have continued their unlawful actions and they must be

stopped from infringing upon Plaintiff's rights by this Court because Plaintiff wants to use his name for good and lawful reasons in entertainment, and youth counseling.

47.    Plaintiff Rick Ross didn't register his common law or federal trademark or trade name, but Plaintiff lawfully used his name in commerce beginning in 1999, while Plaintiff was still in prison, and his name and trademark "RICK ROSS" was used first in commerce "lawfully" after 20 years of unlawful use in commerce, in 1999, as Plaintiff authorized commercial release of "100 KILOS", a major movie. A copy of the countersigned Movie Release is attached hereto as Exhibit "B".

48.    Plaintiff establishes that he was known by his real name, Rick Ross, and known by law enforcement in California in the 1980's and 1990's, prior to and after his 1995 incarceration, and Plaintiff has a common law and federal trade name and trademark lawfully used in commerce, that must by protected by the law.

49.    By filing a trademark application, Defendant Roberts had direct knowledge of a potential trademark issue and intentionally violated Plaintiff's trademark.

WHEREFORE Plaintiff demands judgment against Defendants William Roberts, Carter, DEF JAM, UNIVERSAL MUSIC GROUP et al. in excess of

$10,000,000.00, exclusive of interest, court costs, attorneys' fees,

compensatory, punitive, statutory, and treble damages in 15 U.S.C. Section

1117(b) or (c) retroactive to October, 2006, other injunctive, equitable relief

preventing Defendants from use of Plaintiff's name in commerce, 1117(d)

domain name damages, asset freeze on Defendant Roberts royalties, prohibit

Defendants' release of 2010 music projects in RICK ROSS name and a 1117(a)

formal accounting of Defendants' profits for willful infringement.

## COUNT II – FEDERAL LANHAM ACT, 15 U.S.C. SECTION 1125(a), a/k/a SECTION 43A

**Plaintiff v. Defendant Roberts and all Defendants individually and jointly**

50.    Plaintiff Ricky D. Ross a/k/a "RICK ROSS" incorporates by

reference all of the averments in Paragraphs 1 through 49 herein as if fully set

forth at length.

51.    Trademarks, protected under 28 U.S.C. 1338(a), when duly used in

commerce, automatically accumulate goodwill and value from use of the marks

on goods or in connection with services that distinguish the goods or services of

an owner from anyone who subsequently or thereafter uses the same or similar

mark or services.

52.    Trademark protection arises under the federal Lanham Act, 15

U.S.C. 1051, *et seq*., and "Section 43A", 15 U.S.C. Section 1125(a), provides a

federal cause of action, and gives protection, for infringement of an unregistered

trademark.

53.    The distinctiveness of a trademark determines the level of protection it will be afforded, and distinctive, descriptive personal names like RICK ROSS are only protected in trademark law if they acquire a "secondary meaning" beyond the original merely descriptive meaning associated with goods, services, or a source in the mind of consumers or the public, and a secondary meaning of "drug dealer" attached to the RICK ROSS name, and that "drug dealer" secondary meaning is what Defendants exploited when they misused RICK ROSS' name.

54.    Section 43A of the Lanham Act provides, in relevant part, that "any person who, on or in connection with any goods or services, or on any container for goods, uses in commerce any word, term, **name**, symbol…or any combination thereof, or any **false designation of origin, false or misleading description of fact, or false or misleading representation of fact,**which-(A)is **likely to cause confusion or cause mistake, or to deceive** as to the **affiliation, connection or association** of such person with another person, or as to the **origin, sponsorship or approval** of his or her **goods, services or commercial activities** by another person, or (B) **in commercial advertising or promotion, misrepresents the nature… qualities, or… origin of another person's goods, services, or commercial activities,** shall be liable in a civil action by any person

who **believes that he…is.. or is likely to be damaged by such act.",** and 43A

infringement is a "strict liability" action.

   55.   Section 43A of the Lanham Act does not require the registration nor

formal existence of a trademark in order for its protections to apply, and 43(A),

"**any** word, term**, name…, false or misleading**

**description…or…representation of fact… to cause confusion… mistake or**

**to deceive** as to the **origin, sponsorship or approval of his or her goods,**

**services or commercial activities", applied to Defendants' Def Jam and**

**UMG, their actions, and more directly Defendant Roberts who used the**

**Plaintiff's name RICK ROSS in commerce in false or misleading**

**misrepresentations of claims regarding Roberts' past life, which were**

**confusing, and deceived as to Roberts' origin, sponsorship and association**

**with Plaintiff,** violated Lanham Act 43(A) by wrongful actions of Defendants

Roberts, DEF JAM, UMG, Slip-n-Slide and

Carter, all whom advertised, financed, and promoted Roberts' music projects

and  misrepresented the nature, qualities and origin of Roberts' activities by

using his false criminal image in commerce they stole from **Plaintiff's criminal**

**image**, thus making Roberts and Defendants strictly liable under the Lanham

Act and 43A.

   56.   Defendants' intentionally engaged in unlawful and tortious conduct,

under Section 43A, and Defendants' knew that they had NO rights to use of

Plaintiff's name after they could not successfully register a trademark in

Plaintiff's Rick Ross' name, but Defendants continued their unlawful use with

knowledge that they lacked permission from the USPTO to use the Rick Ross

name in commerce, and said Defendants plan to continue unlawful use of

Plaintiff's name in commerce in 2010 for Roberts' new album, increases the

willful infringement under 15 U.S.C. 1117.

57.    Defendants intentionally deceived the public, and they

misrepresented Roberts falsely to the public as an ex-drug dealer with a criminal

past, largely gained from his perceived affiliation, connection, and association

with Plaintiff, when in fact Roberts had a law enforcement past, but this false

criminal image gained from using Rick Ross' name gave Roberts credibility in

rap and helped sell music because in rap music prior to the success of Eminem

and Kanye West, most rappers had, or claimed, a criminal background that they

survived, then rose to success, but Def Jam & UMG's advertising of Roberts

was false, misleading, and deceptive.

58.    A likelihood of confusion existed concerning Roberts' uses of

Plaintiff's name under the Section 43A of the Lanham Act test, because

Plaintiff's name was and is strongly established publicly, and in segments of the

community, and the Plaintiff's name and the infringing RICK ROSS name are

very similar, services promoted by Plaintiff's entertainment uses, and

Defendants' entertainment uses, have always conflicted, and evidence of actual

confusion exists in the media.

59.   Defendants' use of Plaintiff's name created the substantial

likelihood of  confusion between Plaintiff and Roberts, because Plaintiff's

trademark or trade name was established for over 20 years in Black and urban

crime circles by 2006, similarity between Plaintiff's name and the name used by

Defendant Roberts, was almost identical,  both names were used in a similar way

for their crime affiliation and reputation in Black community, crime and rap

music segments of the "public" and both parties are and were in entertainment,

so a likelihood for confusion is greater since Plaintiff is actively promoting his

life story and new movie deal, and actual name confusion already exists, so

much so that Plaintiff has to refer to himself publicly in entertainment circles,

and on the Internet, as the "Real Rick Ross", to distinguish himself from

Defendant Roberts, who dominates the use of the "RICK ROSS" name in

entertainment and on the Internet, because of the big money invested in the

"RICK ROSS" name brand and Defendants' false advertisement and

misrepresentations about use of the name RICK ROSS by the Defendants who

have convinced and induced segments of the public to buy the rapper Roberts'

goods or services as RICK ROSS, because they are confused about whether it's

Plaintiff, or Roberts.

60.    Defendants Def Jam, UMG and Slip-n-Slide Records knew or should have known  of Defendant Roberts' attorneys' USPTO trademark registrations filings, because by 2006, Roberts was under contract to Defendants, and Slip-n-Slide Records was furnishing Roberts' music services to Def Jam and Universal under music contract and Def Jam had to report trademark matters to its distributor Universal, thus Def Jam and Universal were just as culpable, and willful in their wrongful misconduct, as was Defendant Roberts and others with knowledge, Slip-n-Slide, Carter and Does.

61.    Plaintiff, by virtue of his criminal reputation, was considered a famous celebrity in Los Angeles, CA in the 1980's and 1990's, and in criminal and law enforcement circles nationally, his name was famous and well known by 1996, and by 2001, Plaintiff was the subject of a movie in commerce entitled "100 KILOS" and he's still very well known or famous..

62.    Personal name marks only acquire secondary meaning, and get trademark protection, when they refer to a provider of goods or services, and Plaintiff "Rick Ross" was a provider of goods, illegal drugs, and drug dealer services, during his period of involvement in unlawful commerce, and the "public" knows he was associated with drug activities in the past, and Defendants capitalized on the "RICK ROSS" name's value in the Black, urban

crime, law enforcement and rap music culture, and profited off Plaintiff's name while he was in prison, to unjustly enrich themselves, and William Roberts, in commerce and in rap music, but Defendants' unlawful actions caused confusion in the minds of the "public", as to Defendant Roberts' past affiliation with Plaintiff, when in fact no affiliation existed between Plaintiff and Defendant, and thus Defendants confused the "public", and intentionally deceived the public about his correction officer past.

63.    Defendants carried out a large scale scheme of deceptive advertising for purposes of capitalizing on the value of Plaintiff's name which was being used by Defendant Roberts as his rap name, to help "publicly" sell Roberts' records, and Defendants made knowingly false and misleading statements about Roberts and made false advertisements about Roberts being an ex-drug dealer like Plaintiff, to benefit from the goodwill associated with Rick Ross' name and past identity, and Defendants' deceptive advertising successfully duped the public to purchase Roberts' records in the mistaken belief that he was an ex-drug dealing rapper.

64.    Under 15 U.S.C. 1125(a) of the Lanham Act Plaintiff is entitled to relief for false endorsement at 15 U.S.C. 1125(a)(1)(A), and false advertising, under 15 U.S.C. 1125(a)(1)(B), and Defendants violated both sections and committed a false endorsement by causing confusion using Rick Ross' name in

commerce, and false advertising by claiming Roberts was an ex-drug dealer named "Rick Ross", a materially and deceptive statement made in interstate commerce that harmed Plaintiff Ross.

65.   Plaintiff has met his burden of proving that he has probable cause to prosecute this trademark claim on false endorsement and advertising grounds.

WHEREFORE, Plaintiff demands judgment against Defendants under the Lanham Act, and for half of the unlawful profits from Defendant Roberts' music projects, and under Section 43A for confusion from Defendants unlawful use of Plaintiff's name on or with Defendants' false or misleading advertising and endorsements, for all Lanham Act 15 U.S.C. Section 1125(a)(1)(A) and 1125(a)(1)(B) statutory remedies not in excess of $10,000,000., exclusive of interest and costs, attorneys' fees, and compensatory, punitive, and treble damages under 15 U.S.C. Section 1117(b), retroactive, statutory damages for Defendant's wrongful profits not duplicative of actual damages, a temporary restraining order under 15 U.S.C. Section 1116 to prevent Defendants from using the subject name in any way pending a Court Order, precluding the release and/or sale of music products under the name "RICK ROSS", and if the Court determines infringement was willful, a permanent injunction on Defendants for using Plaintiff's name, a declaratory judgment awarding Plaintiff sole rights to exploit or use RICK ROSS' name in commerce, a seizure order to authorize and

compel seizure of infringing RICK ROSS albums if released in violation of any injunction, associated business records and material used in the infringement from 2006 to the present, all related to ads, albums and products bearing the RICK ROSS name under 15 U.S.C. 1125.

## COUNT III – FEDERAL LANHAM ACT – 15 U.S.C.SECTION 1125(c) a/k/a SECTION 43(c)

66.     Plaintiff Ricky D. Ross a/k/a "RICK ROSS" incorporates by reference all of the averments in Paragraphs 1 through 65 herein as if fully set forth at length.

67.     Plaintiff established an unregistered trademark in his "RICK ROSS' name because of the "drug dealer" secondary meaning of his name, and Plaintiff's RICK ROSS trademark is distinctive, famous, and eligible for dilution protection.

68.     As of January 16, 1996, a provision was added to the Lanham Act, at 15 U.S.C. Section 1125(c), which protects "famous" marks from *dilution* of their distinctiveness" regardless of any '*likelihood of confusion*', and it states:

> "the owner of a famous mark shall be entitled, subject
>
> to the principles of equity and upon such terms as the
>
> court deems reasonable, to an injunction against
>
> another person's commercial use in commerce of a
>
> mark or trade name, if such use begins after the mark

has become famous and causes dilution of the

distinctive quality of the mark, and to obtain such relief

as is provided in this subsection…"

and by 1996, Plaintiff's RICK ROSS name was already famous.

69.    Defendant Roberts and the other Defendants diluted the Plaintiff's "famous" mark, which is the Plaintiff's RICK ROSS name, by their unlawful acts in interstate commerce beginning 2006, as defined by any use of a similar mark which results in the lessening of the capacity of a famous mark to identify its goods or services, which Plaintiff's famous name Defendants lessened in capacity by the unlawful commercial use of the name and its value, and Defendants diluted and blurred the RICK ROSS name by criminally exploiting its entertainment value.

70.    Plaintiff's name was diluted by Defendants based on the Federal Trademark Dilution Act of 1995, because Defendants knew Plaintiff's RICK ROSS name was a "famous" one, and Defendants used the name because of its famousness among rap, Black community, urban crime and law enforcement public and the growing prison community which all number in the millions of U.S. citizens, and Plaintiff has been the subject of two movies, a BET documentary, he is mentioned in popular rap songs, he is friends with many "rich and famous" Hollywood celebrities, and he got his notoriety from his past

criminal life, unlike Defendant Roberts, who formerly a correctional officer, has falsely claimed to be a criminal, and used RICK ROSS' name to attract public attention and a reputation in rap,  and Plaintiff claims Defendants wrongfully diluted the value of his name.

71.    Defendants falsely advertised Defendant Roberts as RICK ROSS intentionally and under the Federal Trademark Dilution Act, Lanham Act Section 43(c), engaged in intentional, willful infringement of Plaintiff's trademark, trade name "RICK ROSS", and Defendants diluted the value and distinctiveness of Plaintiff's famous name.

WHEREFORE, Plaintiff demands judgment against Defendants under the Lanham Act, and for half of the unlawful profits from Defendant Roberts' music projects, and under Section 43A for confusion from Defendants unlawful use of Plaintiff's name on or with Defendants' false or misleading advertising and promotion and for all Lanham Act anti-dilution violations under 15 U.S.C. Section 1125(c) a/k/a 43(c), in excess of $10,000,000.00, exclusive of interest and costs, attorneys' fees, and compensatory, punitive, and treble damages under 15 U.S.C. Section 1117(b), retroactive, statutory damages for Defendant's wrongful profits not duplicative of actual damages, a temporary restraining order under 15 U.S.C. Section 1116 to prevent Defendants from using the subject name in any way pending a Court Order, precluding the release and/or sale of

music products under the name "RICK ROSS", and if the Court determines

infringement was willful, a permanent injunction on Defendants for using

Plaintiff's name, a declaratory judgment awarding Plaintiff sole right to exploit

or use his RICK ROSS name in commerce, a seizure order to authorize and

compel seizure of infringing RICK ROSS merchandise and associated business

records and material used in the infringement from 2006 to the present,

especially related to ads and albums bearing the RICK ROSS name under 15

U.S.C. 1116(d), an asset freeze against intentional infringer Defendant Roberts

to take a formal accounting of gross earning by Defendant Roberts from use of

RICK ROSS' name, production of each Defendant's book and records regarding

past "RICK ROSS' album projects "Port of Miami", "Trilla" and "Deeper Than

Rap" and royalties for each project, and all of Defendant Roberts pre and post-

2006 publishing records, other reasonable injunctive relief, and in the

alternative, statutory damages in 15 U.S.C. Section 1117(c), up to the maximum

award of $2 Million for willful misconduct under Section 43A of the Lanham

Act, and for dilution of Plaintiff's "famous" mark and trade name "RICK

ROSS" pursuant to 15 U.S.C. Section 1125(c).

## COUNT IV – UNFAIR COMPETITION UNDER  LANHAM ACT, CALIFORNIA STATUTORY LAW,  AND IN EQUITY

### Plaintiff v. Defendant Roberts and Defendants individually and jointly

72.    Plaintiff Ricky D. Ross a/k/a "RICK ROSS" incorporates by

reference all of the averments in Paragraphs 1 through 71 herein as if fully set forth at length.

73.    Unfair competition arises under the federal Lanham Act's 15 U.S.C. 1125(a) and the touchstone of unfair competition in 1125(a) Lanham Act claims is whether the Defendant's actions are likely to cause confusion in the mind of the public.

74.    Under 28 U.S.C. 1338(b) federal statutes, unfair competition is unlawful, and false advertising, OR use of false or misleading advertising to describe a person's goods or services, under 15 U.S.C. Section 1125(a)(i)(B)  is unlawful.

75.    Defendants Roberts and Carter, knowing who the real RICK ROSS was in 2006, engaged in unlawful and unfair competition with Plaintiff and violated Plaintiff's name, and Defendants DEF JAM and UMG/Universal, who advocate publicly and in the media against trade infringement, piracy and bootlegging in music and entertainment, wrongly engaged in unlawful and unfair competition with Plaintiff, misused his name, and maliciously engaged in numerous acts of unfair competition, for commercial gain.

76.    Defendants' use of false and misleading advertising to brand the Defendant William Leonard Roberts, II as RICK ROSS, in major magazine print ads, a Def Jam website, online, in television and radio ads, album releases,

special events and in music industry conferences and awards show promotions,

knowing that Defendant Roberts lacked legal rights to use RICK ROSS' name,

was false and misleading and such multi-million dollar false advertising

constituted unfair competition under the law, irreparably harmed Plaintiff and

prejudiced his rights to use his name.

77.     Defendants initiated wrongful violations of Plaintiff's rights, while

Ross was in prison in 2006, and Defendants Def Jam and UMG openly

promoted Roberts as RICK ROSS and their financing, advertising and

promotion of Roberts as RICK ROSS deceived and misled the public to believe

Roberts use was lawful but it was not.

78.     Under "unfair competition" law, at 15 U.S.C. Section 1125,

competing in a way which misleads the consumer into believing that another's

goods or services have the same source or origin as, or are sponsored by, or

affiliated with, the Plaintiff's, is unlawful and constitutes unfair competition by

false designation of origin, and Defendants competed in such a fashion, and

misled the public into believing that Defendant Roberts was an ex-drug dealing

criminal like RICK ROSS, when in fact Roberts came from a college and

corrections background, not a life in any way affiliated with Plaintiff's life, and

Defendants engaged in acts of unfair competition, that violated Plaintiff's rights

under the Lanham Act, when Defendants were "passing off" Defendant Roberts

as if he was RICK ROSS.

79.     Defendants Carter, DEF JAM & UMG/Universal took Defendant Roberts'
illegal and unfair use of Plaintiff's name, prior to 2006, to a higher level given
their support for and participation in Roberts' unlawful schemes, given the
respective significant positions they held in the entertainment industry because
Defendants were at the top of the music industry, Carter as an artist and
"Rocafella" label owner, Def Jam as a major label, and UMG as a major
worldwide distributor, when they signed Defendant Roberts to a major record
deal in 2006 as "RICK ROSS", the public was falsely induced to believe Roberts
had a right to use RICK ROSS' name because Defendants Carter, Def Jam, and
UMG began to falsely promote, market, use, sell, and otherwise represent
Defendant Roberts as "RICK ROSS", up to the present, the public was
effectively deceived by their actions, and Defendants Carter, Def Jam and UMG
jointly engaged in a course of conduct, and a pattern of practices, that were
intentionally deceptive trade practices, constituting unfair competition in the
entertainment industry, for their joint commercial benefits and Plaintiff's
detriment and financial loss, and said Defendants directly caused confusion, and
harm to Plaintiff's interest in his name by their successful branding of Roberts as
RICK ROSS, and engaged in unfair competition, in violation of the Lanham
Act.

80.    By the sheer force of Defendant Carter, Def Jam & UMG Universal's economic and political power as the top artist and top record companies respectively, the Defendants had an unfair advantage over Plaintiff and superior advertising power in regards to the name, and they intentionally used their advertising power over Plaintiff to confuse the public and financially control the RICK ROSS trade name and helped Defendant Roberts accomplish their joint scheme to unlawfully control the RICK ROSS name, by investing millions of dollars in branding the name, with Roberts end Defendants benefiting from the branding, as Defendants acted in bad Faith by using deceptive corporate trade practices to brand Roberts "RICK ROSS".

81.    Defendants acted intentionally and with willful disregard for Plaintiff's rights at all times relevant hereto, thus invoking a need for equitable remedies because adequate remedies will not be available at law given the substantial and public harm caused Plaintiff by Defendants' promotion of Roberts as "RICK ROSS", which Defendants

82.    Each Defendant on their own and in their own way engaged in acts of unfair competition with Plaintiff, and they acted jointly with Defendant Roberts and/or other Defendants in their unlawful and concerted joint effort to achieve success with Defendant Roberts by branding him RICK ROSS for

Defendants' commercial gain and to boost sales, plus Defendant Roberts engaged in unfair competition on his own against Plaintiff, and jointly with the financial backing of the Defendants, he succeeded in his master plan and scheme to be branded RICK ROSS and get rich off of Plaintiff's name and fame fraudulently by engaging in unfair competition, in violation of Section 17500 of CA Business & Prof. Code.

83.    As stated above, Defendants had written notice from the attorney hired by Plaintiff, Crystal Miller O'Brien, that Plaintiff objected to their uses of his name, by letters dated October 5, 2006, November 15, 2006 and November 20, 2006, that Defendant Def Jam's Business Affairs/Legal Department received, but never responded to, and the said letters are attached hereto as Pf.'s Exhibits "C", "D" and " E"  " .

84.    The named Defendants and Doe Defendants' exploitation of Plaintiff's name, and fraudulent promotion of Defendant Roberts as "RICK ROSS", was willful, and violated common law unfair competition, and equity, and the federal Lanham Act.


WHEREFORE, Plaintiff demands judgment in his favor against the Defendants, for FIFTY PERCENT (50%) of each Defendant's gross earnings from Defendant Roberts, and according to the federal Lanham Act and 28

U.S.C. 1338(b) unfair competition  Plaintiff seeks to enjoin all of the

Defendants, particularly Defendant Roberts, from violating Section 43A of the

Lanham Act at 15 U.S.C. Section 1125 (a), and the false advertising provisions

of the Act at 15 U.S.C. Section 1125(a)(i)(B), for no less than $10,000.000.00,

exclusive of interests and costs, plus attorney fees, compensatory, punitive and

treble damages under 15 U.S.C Section 1117, and retroactive actual damages

from Defendants' wrongful profit, not duplicative of actual damages, a

temporary restraining order under 15 U.S.C. Section 1116, that prevents

Defendants from releasing or using music under the name RICK ROSS until the

Court determines if the use is proper, and if the Court decides it improper, a

permanent injunction against Defendants, barring future use of the "RICK

ROSS" name, a seizure order to compel seizure of infringing RICK ROSS

merchandise and associated business records, and materials used in the

infringement at the start of the action especially albums and ads under 15 U.S.C.

1116(d), an asset freeze on intentional infringer Defendant Roberts, to determine

the extent of wrongful earnings obtained by Defendant Roberts and to compel a

formal accounting, a copy of each Defendant's book and records regarding the

RICK ROSS account for each of the album projects, including a copy of all

"RICK ROSS" royalties and publishing statements or budgets, statutory

damages in the alternative, 15 U.S.C. 1117(c), for the maximum statutory

amount given Defendants' willful misconduct up to $2 Million for all Section

43A

" unfair competition "  violations, including any false designation of origin

under 15 U.S.C. 1125(a)(i), and 15 U.S.C. 1119, Court Trademark Order.

## COUNT V – CALIFORNIA COMMON AND STATUTORY LAW, RIGHT TO PUBLICITY, AND PRIVACY

### Plaintiff v. Defendant Roberts and Defendants individually

85.    Plaintiff Ricky D. Ross a/k/a "RICK ROSS" incorporates by

reference all of the averments in Paragraphs 1 through 84 herein as if fully set

forth at length.

86.    The right of publicity is a state-created intellectual property right

that is based on the commercial use of one's name and likeness, which

developed under common law, and it is defined generally as the right of each

person, to control, and profit from, the value of his or her name, likeness and/or

identity, and it protects individuals against the unauthorized commercial

appropriation, exploitation and use of their names and likeness, and allows

monetary recovery for use.

87.    The elements of a right to publicity cause of action are, that

Defendant used Plaintiff's name as a symbol of "his" identity in a manner likely

to cause damage to the commercial value of the persona, without Plaintiff's

consent, with the intent to obtain a commercial advantage from use of Plaintiff 's

name which cause injury.

88.     Defendant Roberts individually, prior to 2006 with Defendant Slip-n-Slide, with other Defendants from 2006 to the present, used Plaintiff's RICK ROSS name and image as the symbol of Defendant Roberts' identity, in a manner which caused damage to the commercial value of Plaintiff's persona without Plaintiff consent, and with the intent to obtain a commercial advantage from the use of Plaintiff's name in the music and entertainment industry, to advertise, promote and sell the Defendant to the rap music public, and to promote and sell Defendants' products, which use has caused financial damage to Plaintiff's commercial value, and name.

89.     Defendant Roberts was signed to a major recording agreement by Defendants Carter, Def Jam and UMG in 2006 while he was already using the name "RICK ROSS" unlawfully, thus the entire deal was unlawful.

90.     Defendants Def Jam and UMG, after signing Roberts to the big record deal in 2006, continued to support Defendant Roberts' unlawful use of Plaintiff's name "RICK ROSS", and furthermore, Def Jam and UMG financed continued use and exploitation of Plaintiff's name as Defendant Roberts' name, and advertised, marketed, and/or promoted Defendant Roberts, and his music products and services Roberts created, for sale in the music and entertainment industry as Defendants jointly used and claimed full rights to use Plaintiff's

name for Defendants' commercial purposes, which caused harm to Plaintiff's name, commercial value, and Plaintiff's rights to use his own name, because Defendants Carter, Def Jam, and UMG/Universal, and the Doe Defendants, made millions off branding and controlling RICK ROSS' name, and they used Plaintiff's name to promote Defendant Roberts and let Roberts use the name deceptively in commerce for Defendants' unfair commercial gains, which interfered with Plaintiff's ability to earn a living in commerce using his name.

91.    Defendants intentionally, and maliciously, violated Plaintiff's right to publicity by using Plaintiff's "RICK ROSS" name, image and identity to imitate Plaintiff's drug dealer image and "famous" identity, and to wrongfully convert Defendant Roberts' image into Plaintiff's past drug dealer identity as RICK ROSS  and in the process, Defendants damaged Plaintiff's name, identity, and persona.

92.    Rights of publicity, under California common law, preclude the use of any person's identity to advertise or promote products by playing on the goodwill of that person's identity, and Defendants used Plaintiff's crime identity and the goodwill associated with Plaintiff's name and notorious ex-drug dealer identity, to support Defendant Roberts' false drug dealer image. .

93.    Defendants violated Plaintiff's rights to publicity, and took commercial advantage of Plaintiff, for purposes of trade, because they knew that