in the rap music business, RICK ROSS' name would attract attention, and sales, for Roberts.

94. Defendants Roberts and Carter, Def Jam, UMG/Universal and Doe Defendants, manipulated, exploited and used Plaintiff's name, and agreed to allow Defendant Roberts to continue using Plaintiff's name, precisely because it was already a well known name in criminal and rap music circles, and because it would help to sell Defendant Roberts and Defendants' music products to the rap music public, and establish Roberts' identity and image as an ex-drug dealer like Carter and other successful rappers, who rose from a life of crime and made it to the top.

95. Defendants Roberts, with the help of his co-Defendants, stole this Plaintiff's name and identity and consequently violated Plaintiff's right to publicity, for their joint commercial gain, then exploited Plaintiff's identity to the maximum extent of possible exploitation for the value associated with Plaintiff's name, and the identity associated with Plaintiff's name while Plaintiff was in prison, causing serious damage to the commercial value of Plaintiff's persona, or public reputation, which acts were fraudulent, because in reality Defendant Roberts had a prison law enforcement background as a corrections officer, not a criminal background or an ex-drug dealer background, as the Defendants have falsely and publicly portrayed Roberts, and Defendants'

financial domination of Plaintiff''s name has prevented Plaintiff from capitalizing on the commercial value and goodwill associated with his own name in commerce.

96. The predominant character of Defendants' uses of Plaintiff' 's identity and exploitation of Plaintiff' RICK ROSS name, has been commercial from the start, to establish Defendant Roberts' identity so he could sell his and Defendants' products for profit, not for fair use, news gathering, parody, or First Amendment rights, or freedom of expression.

97. The state of California has a strong interest in protecting intellectual property rights owners from misappropriation and illegal commercial exploitation regardless of their identity, wealth or the value of their property, because in California, all have the right to control the commercial use of their identity.and their name's commercial value.

98. Plaintiff Rick Ross had a bad and criminal identity attached to his name, but now he wants to control the usage of his name, so that he can associate his name with the good and lawful purposes he intends to use it for, since he's out of prison and involved in entertainment and motivational speaking, but Defendants keep controlling use of his name, and they are violating his right of publicity, and Defendants have not stopped using Plaintiff's

name negatively despite his requests, because they've made and are making millions of dollars off of Plaintiff's name for their commercial benefit only, since Defendants have linked Plaintiff's name with Roberts' rap identity in commerce and interstate commerce in the music industry.

99.   In 1999 while still in prison, Plaintiff authorized the production of the major film studio distributed and released the motion picture "100 KILOS" about his life, which entertainment product was released on VHS/DVD and distributed in 2001, and Plaintiff's authorization and use was not for charitable, news, or public purposes, but strictly for sales of movies in interstate commerce, and the Plaintiff benefited commercially from the movie, and kept his name and story in the public eye years before Defendants' 2006 unlawful use, and as a direct result thereof, Defendants' individual and corporate schemes that exploited Plaintiff's name and identity for Defendants' financial benefit, violated Plaintiff's rights of publicity.

100.   California's common law right to publicity protects individuals, and their names and likeness against unlawful appropriation due to a junior user's use of a senior user's name, likeness, and identity for the infringing user's advantage, commercially or otherwise, and lack of consent and resulting injury to Plaintiff or his identity, has also been referred to as the common law right of

privacy.

101. California's common law right of publicity was upgraded within the legislative and statutory framework under California Civil Code Section 3344, and Section 3344(a) states in relevant part: "Any person who knowingly uses another's name…likeness, in any manner, on or in products, merchandise, or goods, or for purchases of advertising, selling, or soliciting purchases of, products, merchandise, goods, or services, without such person's prior consent,… shall be liable for any damages sustained by the person…injured as a result thereof.", which statutory laws include elements of "knowing" use and a "direct connection" between the use and commercial purpose to the general common law protections, but the statutory law under Section 3344(a) doesn't replace common law, but protects names and likeness, and Cal. Bus. & Prof. Code Section 17500 is limited to equitable relief.

102. Under state common law, which many celebrities seek protection under, and Section 3344(a) of the California Civil Code, which protects "any person" from violation of their right to publicity and privacy, Defendants' actions rise to the level of actionable violations of both California common and statutory law, and Defendants have violated Plaintiff's rights to publicity by their name and unlawful actions that commercially exploited Plaintiff's name and identity, from which Defendants benefited profiting millions of dollars at

Plaintiff's expense.

103. Defendants gained commercial value by using Plaintiff's real name, or its derivative trade name which they developed from abbreviating Plaintiff's first name with the "y" removed from Plaintiff's first name "Ricky" to get RICK ROSS which Plaintiff used in his former business in commerce from 1980 to the present, which is the name Plaintiff had established publicly particularly in California, and Defendants used Plaintiff's name commercially and knowingly, without Plaintiff's consent, because the name attracted attention, had intrinsic commercial value, and benefited Defendants who were able to make millions of dollars from exploiting it.

104. Injury to the Plaintiff's right of publicity is not just limited to present or future economic loss but includes humiliation, embarrassment and emotional or mental distress, and Defendants caused Plaintiff humiliation and mental distress.

105. Use likely to damage the commercial value of a person's persona or public reputation is a hallmark of the right of publicity, and Defendants in this cause appropriated Plaintiff's name and identity strictly for commercial gain, forcing commercial loss on Plaintiff by their dominant overwhelming use, and total usurpation, of Plaintiff's name and identity, to the extent that Plaintiff has been prevented from using his own name on his name Internet website since

Defendant William Roberts controls the Rick Ross Internet website, and damage to Plaintiff's commercial value is actual, financial and real, not just possible, likely or imagined.

106. Plaintiff has been severely damaged commercially by Defendants' unlawful actions, which infringed upon his common law and statutory rights to publicity, usurped Plaintiff's authority over his own name and converted Plaintiff's name, likeness and identity to Defendants' control and to Defendant Roberts' false identity, diverting commerce intended for Plaintiff to Defendant Roberts' Internet sites, and financially dominating the use of Plaintiff's name and identity, causing Plaintiff damage to the commercial value of his persona and public reputation, and directly limiting Plaintiff's ability to earn an honest living in entertainment without
encountering confusion .

107. The common law right of privacy protects an individual's name and persona from unwarranted use, intrusion, exploitation and misappropriation and Plaintiff has had his right of privacy violated by the Defendants, who benefited from their use, exploitation and misappropriation of Plaintiff RICK ROSS' name and persona without Plaintiff's consent, and Plaintiff's personal dignity and rights were violated by Defendants' unlawful actions done for commercial advantage.

108. Defendants violated Plaintiff's rights to publicity and privacy under the common law, and statutory laws of California at Cal. Civ. Code Section 3344(a), and Defendants jointly, and Defendant Roberts individually, used the Plaintiff's name as a symbol of identity without Plaintiff's consent, to establish Defendant Roberts' identity, and to brand Defendant Roberts "RICK ROSS" using Plaintiff's image of a major, notorious Black drug dealer which is false, with the intent of obtaining a commercial benefit from Ross' identity, which benefits he obtained, and Defendants profited in the millions of dollars from using Plaintiff's name, while Plaintiff was in prison, unable to defend his name, and Defendants never offered compensation or a share of profits to Plaintiff, and instead, concealed   benefits from use of Plaintiff's name, and wrongly conferred them to Defendants, while Plaintiff's name, identity and persona were knowingly, forcibly seized by Defendants, maliciously, fraudulently, and unlawfully, to Plaintiff's detriment.

109. The October 5, 2006, November 15, 2006, and November 20, 2006 letters that Plaintiff's 2006 attorney Crystal Miller O'Brien sent to representatives of Slip-n-Slide Records and Def Jam/UMG's Business Affairs/Legal Department in New York  at Pf.'s Exhibits "C", "D" & "E", as attached, give Defendants legal notice, and invokes California Civil Code

Section 3344 authority and informed the Defendants that Plaintiff did not consent to their unauthorized use of his name.

WHEREFORE, Plaintiff demands judgment against Defendants, and in his favor, for violation of Plaintiff's California common law and statutory rights to publicity and privacy, and Plaintiff demands all remedies available under California Civil Code Section 3344 and 3344(a) and all remedies available at common law including monetary damages in an amount to be determined at trial no less than $10 Million and punitive damages sustained as a result of Defendants intentional misconduct, a constructive trust over, and disgorgement of, Defendants' unlawful profits, in an amount to be determined at trial but no less than $10 Million, a declaratory judgment declaring Plaintiff the rightful own of the trademark to his name, and an order compelling Defendants to pay all costs, disbursements and expenses paid or incurred by Plaintiff as a result of Defendants' unlawful conduct, including attorneys' fees and court costs, interest to the extent provided by law, damages retroactive to 2006, and appropriate injunctive relief under California Business and Professions Code, Section 17500.

### COUNT VI – CALIFORNIA COMMON LAW MISAPPROPRIATION OF NAME AND LIKENESS
**Plaintiff v. Defendant Roberts individually, and all Defendants jointly**

110. Plaintiff Ricky D. Ross a/k/a "RICK ROSS" incorporates by reference all the averments in Paragraph 1 through 109 herein as if fully set forth

at length.

111. Common law misappropriation of name and likeness under California law is a tort that protects the value associated with use of a person's name or likeness, and misappropriation, if proven, allows for recovery of monetary damages from the unauthorized users of a person's name, if an advantage or benefit was conferred upon unauthorized users.

112. Common law misappropriation of name, protects against intrusion upon the private self-esteem and dignity of a person, and herein Defendants have intruded upon the dignity and self-esteem of Plaintiff Rick Ross by taking control of his name and causing Plaintiff to lose dignity and respect publicly, in his family, in the prison community, and generally in the Black community nationally.

113. In the 1980's and 1990's, Plaintiff Rick Ross was LA's most famous criminal and he enjoyed celebrity status, until he was incarcerated in 1995, yet his name and reputation remained valuable while Plaintiff was in prison, and gained value thereafter, which Defendants misappropriated and used for their sole benefit and financial gain, in concert with the other Defendants.

114. Defendant Roberts misappropriated Plaintiff's name and identity and seized control over the commercial use of Plaintiff's name without

Plaintiff's consent, starting after 1995 when Plaintiff went to prison and continuing while Plaintiff was in prison, and Defendants intentionally misused Plaintiff's name due to its popularity, its sale value in rap music, and for past criminal association since Roberts didn't have a true criminal background, and Roberts was a struggling rapper on Suave House Records, then Slip-n-Slide Records, in search of his big break, when he started using the name "RICK ROSS", and after he used that name publicly, his rap value increased and Defendants increased their unlawful usage, and after Roberts signed to Def Jam in 2006, Defendants' exploitation increased.

    115.   After 2006, Defendants knowingly increased misappropriation and use of Plaintiff's name and identity, despite Plaintiff's repeated written requests for defendants Roberts, Def Jam, Universal and Slip-n-Slide Records, to cease their unauthorized, unlawful uses, and after Defendant Roberts got signed to the major record deal, and Slip-n-Slide Records secured distribution as a label with the Defendants Def Jam, Universal, and Defendants intensified and further tried to conceal their unlawful conduct, which supports the punitive damages claim for knowing misconduct and willful misappropriation, which continues to the present.

    116.   Defendants intentionally misappropriated Plaintiff's name and identity as Defendants' intentional misconduct was authorized and approved by

Def Jam and Universal, who intentionally refused to respond to requests from Plaintiff's 2006 attorney, that Defendants stop misappropriating and misusing Plaintiff's name, and Def Jam/UMG failed or refused to contact or negotiate with Plaintiff's 2006 attorney while Plaintiff was in prison, since Defendants' malicious intent was to continue avoiding Plaintiff's attorney; and Plaintiff's reasonable efforts to negotiate with Defendants were denied because Defendants profited mercilessly from Plaintiff's name, likeness, image and identity, bypassing lawful efforts and taking advantage of and benefiting from Defendants' intentional wrongful misconduct and malicious exploitation of Plaintiff's name, criminal image, likeness and identity, to the greatest extent allowed and to the tune of millions of dollars in unjust profits.

    117.   Plaintiff had his name, identity, and the value associated with his name, taken away from him forcibly by the Defendants while he was in prison, for the Defendants' sole advantage and benefit, to Plaintiff's detriment, which use by Defendants was formally opposed in writing, within Plaintiff's 2006 attorney's letters of notice served upon Plaintiff, but yet and still Defendants persisted, which Defendants' actions were an unauthorized, unlawful, unwarranted intrusion upon Plaintiff's rights, causing Plaintiff to lose dignity, value, and respect.

    118.   Defendants dominated and took control over Plaintiff's name and

identity financially, for their malicious, profit-making purposes, and Defendants continued their wilful misconduct and misappropriation, violated Plaintiff's rights, under California common law, and misappropriated Plaintiff's name, and likeness.

119.   Defendants Def Jam and UMG/Universal, experienced music industry giants, campaign publicly against all forms of piracy in the entertainment industry but they engaged herein in unlawful piracy and cyber-piracy of Plaintiff's name and identity, and violation of Plaintiff's intellectual property rights, for which they should be held accountable, in punitive damages, for their outrageous, egregious and illegal conduct and misappropriation of Plaintiff's name.

WHEREFORE, Plaintiff Ricky D. Ross, a/k/a "RICK ROSS", demands judgment against the Defendants, in his favor, for Defendants' unlawful illegal misappropriation of his name, likeness and identity, and Plaintiff asks this Court to award damages in excess of $1 Million for Defendants' misappropriation of Plaintiff's name, plus award appropriate injunctive relief based upon California law, plus punitive and special damages for Defendants' malicious, intentional tortuous conduct in light of Defendants receiving letters of notice of Plaintiff's lack of consent to the misappropriation and use of Plaintiff's name, by his attorney in October, 2006, and November, 2006, and Plaintiff further requests

that Defendants be ordered to buy and publish an advertisement in music industry publications, like Billboard, and on entertainment industry Internet sites like BET.com, VH1.com. and MTV.com, informing the public that Defendants cannot use Plaintiff's "RICK ROSS" name and identity any more, that Plaintiff is the sole owner of the "RICK ROSS" name, and that industry giants Defendants Def Jam and UMG/Universal issue a public apology for their role in misappropriation of Plaintiff's name, likeness, and identity, and a public service announcement denouncing piracy, and cyber-piracy, of names, plus attorneys fees and costs to Plaintiff's attorney, interest on any award and further relief deemed appropriate and just by the Court and California law.

### COUNT VII – FRAUD AND FRAUDULENT MISREPRESENTATION

**Plaintiff v. Defendants Roberts individually, and Defendants jointly**

120.   Plaintiff Ricky D. Ross a/k/a "RICK ROSS" incorporates by reference all the averments in Paragraph 1 through 119 herein as if fully set forth at length.

121.   From the beginning of Defendant Roberts' decision to use Plaintiff's name, identity, image and likeness for his rap industry identity, and from the initial date and time Defendant Roberts used Plaintiff's name "RICK ROSS", privately, or publicly, after 1995 in association with his rap music identity, William Leonard Roberts, II has engaged in acts of direct fraud and

fraudulent misrepresentation of material facts, because his name is not "RICK ROSS", nor was he authorized by Plaintiff to use the name "RICK ROSS", and as stated herein-above, Plaintiff had already established his name, nickname and moniker "RICK ROSS" publicly for more than 15 years from 1980 to 1995 by using the name in interstate commerce, and in addition, Plaintiff's name had accumulated goodwill and value in the urban crime genre, and Plaintiff was a famous celebrity in that arena and amongst his peers, and in parts of the Black community, when Plaintiff was sent to prison in 1995, and in 1995 Defendant Roberts was starting college, and working as a correctional officer in Florida in 1996, and some time after 1996, Defendant Roberts was joined by other parties and Defendants as knowing participants in the intentional fraud and fraudulent actions and misrepresentations of material facts concerning Roberts' unlawful use of Plaintiff's name, image and identity, and false representation of Roberts as "RICK ROSS", which use has continued and added additional participants in the fraud up to the present, including the named Defendants, and the Doe Defendants.

122.   Defendants have never denied nor rebutted that they were participating nor can they deny that they are participating, in a fraudulent enterprise because at inception, Defendants' representation of Defendant Roberts as "RICK ROSS" was an act of fraud, since Roberts was falsely acting under

Plaintiff's name and image.

123.   Fraud, as defined in Black's Law Dictionary, 5th Edition, is "intentional perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him or to surrender a legal right, a false representation of a matter of fact, whether by words or conduct, by false or misleading allegations, or by concealment of that which should have been disclosed, which deceives and is intended to deceive another, so that he shall act upon it to his legal injury.", as defined, Defendants engaged in knowing fraud.

124.   Defendants Roberts, Carter, Slip-n-Slide, Def Jam and UMG knew there was a person who was a true former drug dealer in Los Angeles, CA in the 1980's-1990's by that name of "RICK ROSS", whom Defendant Roberts has allegedly admitted that he got the name and identity "RICK ROSS" from, so they participated in a "fraud" according to common law and Black's Law Dictionary by using the name with intent to deceive in commerce and marketing, and by promoting, and helping to establish Roberts as "RICK ROSS", in the minds of the public who were deceived about Ross' identity intentionally and persuaded to buy Defendant Roberts' musical services, and support the wholesale use and theft of Plaintiff's image, name, and rights.

125.   In this case, not only did Defendant Roberts claim, and use,

Plaintiff's name without his permission , he fraudulently authorized others to misuse Plaintiff name, and later Roberts claimed Plaintiff's criminal history as his own, falsely and fraudulently, because in fact Defendant Roberts had a law enforcement history as a corrections officer, not a notorious, ex-drug dealer, as Roberts has intentionally, and fraudulently, maintained and when Roberts was confronted by a few online media sites about his true background initially he denied that he was a corrections officer to uphold his false image as a drug dealer and to deceive. A copy of an online news article at www.thesmokinggun.com released on 07/21/08 is attached hereto, and incorporated by reference herein as Pf.'s Exhibit "F".

      126.   Proof of Defendant Roberts' training that led to his employment in 1996 as a Dade County, Florida corrections officer, which, in the article at Exhibit "E" he initially denied, to maintain his criminal rapper image based on Plaintiff's name and identity, is shown, in a copy of an official State of Florida document, identifying Defendant William L. Roberts, II, Defendant Roberts' real name on a May 29, 1996 "Basic Recruit Certificate of Compliance" for Correctional Officers which Defendant Roberts received in 1996, before he started working as a  "C.O.", and a copy of the certificate was with the www.thesmokinggun.com online article dated 07/21/08 with Pf.'s Exhibit "F", and is referred to as Pf.'s Exhibit "G".

127. Defendants, including Defendant Def Jam, knew that Defendant Roberts' ex-drug dealer representations were fraudulent, but Defendants knowingly participated in the ongoing scheme by Defendant Roberts so that they could brand Defendant Roberts, fraudulently, an ex-drug dealer and appropriate, benefit commercially from, use and takeover Plaintiff's name and past criminal identity as a major drug dealer, and merge or transfer that image onto, or over to, Defendant Roberts so that the Defendants could exploit Plaintiff's criminal image for commercial gain, because Defendants knew that Notorious BIG, Defendant Carter a/k/a "Jay-Z", 50 Cent, and other rappers, had successfully exploited and used the "ex-drug dealer" business model and it led them to major rap music success, and it helped Roberts too.

128. Despite the attention and success the "ex-drug dealer" business model brought to Defendants, and Defendant Roberts, Defendants' misuse of Plaintiff's name and identity to accomplish Defendants' exploitation of Plaintiff for their sole commercial gain was malicious, unlawful, harmful, illegal and FRAUDULENT!

129. Defendant Roberts' rap name, identity, and image was "bootlegged" fraudulently from Plaintiff's name, identity and image, while Plaintiff was locked in prison for his crimes, unable to defend himself and his name from Defendants.

130. Defendants knowingly, intentionally, and each in their own right, fraudulently misrepresented Defendant Roberts' background, identity, image and persona, as if Defendant Roberts was Plaintiff "RICK ROSS", or like Plaintiff in some way, when in fact, Defendant Roberts was not, and is not, like Plaintiff, and Defendants, and Defendant Roberts, concocted their fraudulent scheme to make Defendant Roberts' rap image, identity and persona, falsely, out of Plaintiff's name and image, and Defendants' fraudulent scheme was working until Plaintiff got out of prison, and discovered or uncovered their fraud and started to reclaim his name.

131. In 2005, Defendant Roberts released his big hit record, "Hustlin'", a song about the kind of life Plaintiff, not Defendant Roberts, lived and in that song, Defendant Roberts talks of drug dealing and calls himself RICK ROSS, Plaintiff's name that by 2005, Defendant Roberts unlawfully claimed as his own rap name, and Defendants Def Jam, UMG and Carter supported the record big-time, and released a remix with top rap artists and 2006 Def Jam President Defendant Carter, Jay-Z, performing on the hit remix ,and Defendant Roberts' fraudulent scheme had succeeded.

132. Defendant Carter a/k/a "Jay-Z", by participating in and furthering the fraudulent schemes of Defendants and Defendant Roberts, as an artist and Def Jam President in 2006, opened himself up to individual liability for the

injury caused

to Plaintiff, because he directly and knowingly participated in Defendant

Roberts' fraudulent scheme as an individual, because he knew who the real Rick

Ross was, but surprisingly he chose support Roberts' "Rick Ross" project

because he wanted to sign Roberts to elevate Def Jam's rap portfolio which had

lagged in sales at that

time, so Carter threw his blind support behind Roberts and his unlawful name

use

anyway, and he shut down other label artists like Beanie Sigel, State Property

and Nas who were scheduled for release before Roberts, as part of his Roberts

deal.

133.   Defendant Carter a/k/a "Jay-Z" was himself a former drug dealer by

his own admission publicly, and as recently as 2009, he appeared on the Oprah

Winfrey TV Show on location in New York in his former Marcy Project with

Ms. Winfrey and admitted his drug-dealing past, which statements were not

fraudulent.

134.   Defendant Carter a/k/a "Jay-Z" knew that Roberts representations

that he was formerly a major drug dealer like RICK ROSS were fraudulent,

because in 2006, Carter knew about Plaintiff "Rick Ross", because in the past,

Defendant Carter and Plaintiff Rick Ross were in the same business on a major

level, and in ways, Defendant Carter and Plaintiff were both peers in the illegal drug business.

135.   Defendant Carter a/k/a "Jay-Z" participated in a fraud concocted by Defendant Roberts and the other Defendants, while Plaintiff was in federal prison serving his time, that included a scheme to misuse RICK ROSS' name, image, identity, likeness, persona and public reputation, and the name's value in the rap music business, because in the rap music business, a "bad" criminal name, image, identity, and reputation is good for business because it has been proven that a bad name or reputation is good for business and helps sell records in the rap industry.

136.   Defendant Roberts and his former labels, Defendant Slip-n-Slide Records, and a previous label Suave House Records, participated in Defendant Roberts' use of Plaintiff's name and produced, promoted and recorded music with Roberts in his "RICK ROSS" character, including songs that weren't released, and thus Slip-n-Slide Records is jointly liable with Defendants and Roberts for Roberts fraudulent actions, since when Roberts signed with Defendants Def Jam, UMG and Carter, Slip-n-Slide Records was involved, owned contractual rights to Roberts' services, and allegedly, Slip-n-Slide signed a distribution deal with Defendants Def Jam and UMG/Universal, to furnish Roberts services to label and distributor that invested the millions to brand