

COPY

Melvin T. Sharpe, Jr. Esquire
msharpeesq@aol.com
Attorney for Ricky D. Ross a/k/a Rick Ross
PA Attorney ID Number 43312
P.O.Box 50149
Philadelphia, PA 19132
Tel.(267) 514-7289/Fax (310) 400-7240

Jeff Berke, Esquire, POLK & BERKE
jeffberke@yahoo.com
Attorney for Ricky D. Ross a/k/a Rick Ross
SBN No. 101574
11620 Wilshire Blvd., Suite 800
Los Angeles, CA 90025
Tel.(310) 235-2009/Fax (310) 235-2029
Local Counsel

FILED
CLERK, U.S. DISTRICT COURT

JUL 1 4 2010
11:39

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

# THE UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION – LOS ANGELES

RICKY D. ROSS, an individual,
also known as "RICK ROSS", also
known as FREEWAY RICK ROSS
Plaintiff

vs.

WILLIAM LEONARD ROBERTS,
II, an individual, also known as and
doing business as, performing as and
trading as rap artist  "RICK ROSS",
and/or "Rick Rozay", MAYBACH
MUSIC GROUP, a fictitious entity,
THE ISLAND DEF JAM MUSIC
GROUP, a fictitious entity, and/ or
DEF JAM  RECORDINGS, LLC, a
Delaware limited liability company
SHAWN CARTER, an individual,
also known as JAY-Z, individually,
and as the former President of DEF
JAM , UMG  RECORDINGS, INC.,
also known as UNIVERSAL MUSIC
GROUP , Delaware corporation and

CV No-10- 04528 PA (RZx)

First
AMENDED COMPLAINT FOR:

**COMMON LAW AND FEDERAL
TRADEMARK/NAME INFRINGE-
MENT, TRADEMARK DILUTION;
UNFAIR COMPETITION; STATE
MISAPPROPRIATION OF NAME;
FALSE ENDORSEMENT , FALSE
ADVERSTISING; RIGHT TO PUB-
LICITY & PRIVACY; FEDERAL
43(A) AND 43(C) LANHAM ACT
VIOLATIONS, CONSPIRACY TO
DEFRAUD AND COLLUSION,
TORTIOUS INTERFERENCE
WITH BUSINESS RELATIONS;
NEGLIGENCE AND IMPUTED
NEGLIGENCE; UNJUST ENRICH-
MENT, FRAUD AND MISREPRES-
ENTATION, COMPENSATORY,
PUNITIVE, TREBLE DAMAGES,
INTEREST, LEGALS FEES, AND**

VIVENDI UNIVERSAL subsidiary;
SLIP-N- SLIDE RECORDS, and
JANE AND JOHN DOES, 1 through
10, inclusive.

Defendants.

COSTS OF SUIT; F.R.CIV.PRO. &
U.S.C.D. L.R. 65 INJUNCTIONS,
ACCOUNTING OF DEFENDANTS'
GROSS EARNINGS FROM USING
PLAINTIFF'S NAME SINCE 2006;
PERMANENT INJUNCTION AND
FURTHER EQUITABLE RELIEF,
ASSET FREEZE, NAME CHANGE
ORDER, CONSTRUCTIVE TRUST
RETROACTIVE DAMAGES,  AND
WEBSITE REMOVAL ORDER

NOW comes Plaintiff RICKY D. ROSS a/k/a "RICK ROSS", an individual US

citizen and resident of the State of California living in Los Angeles County, who

according to Rule 15. (a), (b), and (c) of the Federal Rules of Civil Procedure,

files this amended Verified Complaint and demand for judgments as the Plaintiff

against Defendants WILLIAM LEONARD ROBERTS II,  d/b/a and t/a "RICK

ROSS" or "Rick Rozay"), Maybach Music Group, alleged fictitious entity, THE

ISLAND DEF JAM MUSIC GROUP,  SHAWN CARTER a/k/a "Jay-Z", an

individual, UMG RECORDINGS, INC. also known as UNIVERSAL MUSIC

GROUP, a Delaware corporation, SLIP-N-SLIDE Records, Jane and John Does,

who unlawfully used and exploited Plaintiff's name, persona, and its value, for

their unlawful benefit in commerce and interstate commerce and who infringed

on Plaintiff's trademark, name and rights, and used RICK ROSS' name without

his consent, and the U.S. Patent and Trademark Office rendered a "final refusal"

to William Roberts in his attempts to register a trademark in Rick Ross' name,

and Defendants made millions of dollars by exploiting the RICK ROSS name in commerce, without Plaintiff's consent, so Plaintiff seeks Lanham Act trademark protection, immediate injunctive relief, and money damages, due to Defendants' unlawful exploitation of his RICK ROSS name from 2006 to the present, their wrongful refusal to "cease and desist" from using Plaintiff's name in commerce, and Defendants' continued violations of 15 U.S.C. 1091 et seq., the Lanham Act, federal, state and common law, and equity, according to the Federal Rules of Civil Procedure, and US Central District Local Rules, and applicable law of the forum state of California, as follows:

1.    Plaintiff RICKY D. ROSS, born Ricky Donnell Ross also known as "RICK ROSS" and "Freeway Rick Ross", is an individual USA citizen and now a resident of the State of California with address in Los Angeles County at 1252 Turmont Street, Carson, CA 90746, and Plaintiff has used his name since 1980, but lawfully used it first in commerce in 1999, and never abandoned his name.

2.    Defendant WILLIAM LEONARD ROBERTS II, also known as, doing business as and trading as "RICK ROSS", is an individual USA citizen, and resident of the State of Florida residing in Dade County at 1750 Northwest 193rd Street, Opalocka, FL 33056, and  Defendant Roberts was the primary wrongful user of Plaintiff's trademark and name, at all times relevant hereto, and recently upon investigation, Defendant has used the name "Rick Rozay".

3.     Defendant MAYBACH MUSIC GROUP, is a music company or label, with a principal place of business in the State of Florida, at 10398 Laurel Road, Davie, FL 33328, and is allegedly distributed by Defendant DEF JAM and/or UNIVERSAL and it is or to some degree was, created, named, operated, owned and controlled by Defendant William Roberts, and group was allegedly formed in 2008 before Defendant Roberts released his third studio LP, "Deeper Than Rap", on the upstart Maybach Music Group label, a symbol of Defendant Roberts major-league success in music after his first album then titled "Career Criminal" but later changed to "Port of Miami", was commercially successful, and his second LP "Trilla" sold 500,000+ RIAA units and debuted at the top of Billboard music charts, and his third album sold very well commercially also.

4.     Defendant THE ISLAND DEF JAM MUSIC GROUP, a division of of UMG RECORDINGS, INC., or DEF JAM RECORDINGS, LLC, a Delaware LLC, with principal place of business in New York State at 825 Eighth Avenue, New York, 10019, at all times relevant hereto, a/k/a Def Jam was the top selling rap music label in the music industry, with its artists recordings distributed by UNIVERSAL MUSIC GROUP and DEF JAM has corporate offices and does business in Los Angeles and New York and in interstate commerce, and DEF JAM got involved in "RICK ROSS" project in 2005, and unlawfully violated Plaintiff's rights by using his "Rick Ross" name with Roberts without consent.

5.     Defendant SHAWN CARTER, also known as hip hop and rap artist and businessman trading as "Jay-Z", is an individual USA citizen and a resident of the State of New York, with a business address at 6 West 25th Street, 39th Floor, New York, NY 10010, and in 2006, Defendant Carter a/k/a Jay-Z signed Defendant Roberts while President of DEF JAM and at all times relevant hereto Defendant Carter engaged in exploiting RICK ROSS with Defendants, Roberts, and in commerce and Shawn Carter gained financially from using RICK ROSS' name and established himself as a successful music industry executive due to his Rick Ross' rap success, but he directly and proximately caused harm to Plaintiff.

6.     Defendant UMG RECORDINGS, INC. a/k/a Universal Music Group (referred to herein as "UMG", "Universal") is a for-profit Delaware corporation subsidiary of VIVENDI UNIVERSAL, parent, and UMG is a major corporation doing business in interstate commerce, and commerce, with a principal place of business in the U.S. in Los Angeles, CA, at 2220 Colorado Street, Santa Monica, CA 90404 and at all times relevant hereto, UMG was or is one of the world's top distributors of content and music and the primary financial backer for DEF JAM and RICK ROSS musical projects from 2006 to present, but UMG engaged in an unlawful course of conduct and a pattern of practices that infringed, harmed and violated Plaintiff's rights, plus UMG financed the branding of Roberts as "RICK ROSS' by UMG authorizing use of Plaintiff's name, and persona, to further the

career and commercial interests of the Defendants, and Roberts as RICK ROSS, and as distributor, UMG was responsible for clearing, verifying, and authorizing use of the RICK ROSS name in commerce by Roberts and Def Jam by contract.

7.    Defendant SLIP-N-SLIDE RECORDS is a music company or label doing business in Miami, Florida, with its principal place of business in Miami Beach, FL at 919 Fourth Street, 33139, and at all times relevant hereto Slip-N-Slide Records, prior to 2006, was the small record label that Defendant Roberts had signed with, after Defendant Roberts ended his contractual agreement with Suave House Records, a small Southern label, and Slip-N-Slide Records was the company Defendant Roberts was affiliated with, under contract with or signed to furnishing services to, at the time Roberts signed to Def Jam and UMG in 2006.

8.    JANE or JOHN DOE Defendants are individuals, companies and/or corporations that aren't known by name, but Plaintiff may amend Complaint if necessary upon discovery of the identity of Doe Defendants 1-10, and Plaintiff believes, based upon reasonable investigation, that Defendants above and the Doe Defendants, were acting on behalf of themselves or as authorized agents of the primary Defendants, with respect to conduct alleged in amended Complaint.

9.    This Court has in persona jurisdiction over the Plaintiff and all the Defendants who are  involved in this lawsuit, by virtue of their federal actions and business in the state of California and interstate commerce, subjecting them

to California law, and California's Long–Arm Statute at Cal. Civ. Proc. Section 410.10 which states in part, "Jurisdiction. Basis. Court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state, or of the United States…", and many of the unlawful commercial actions at issue have occurred in California and involve the Lanham Act, entertainment and interstate commerce, and Defendants engaged in unlawful acts of commerce worldwide, using Plaintiff's name, and Defendants caused, and are causing, Plaintiff harm publicly, in entertainment and music business within and outside of California.

10.   This Court has original jurisdiction of the subject matter under 28 U.S.C. 1331 & 1338, federal question, trademark and unfair competition actions under U.S. law, under 28 U.S.C. 1332, diversity of jurisdiction matters, between citizens of different states, and involves federal and related state claims, arising out of the same set of facts and transactions and occurrences, and the amount in controversy for each count exceeds $75,000.00, exclusive of interest and costs.

11.   This Court has supplemental jurisdiction, under 28 U.S.C. Section 1367(a) or 1367(b), over Plaintiff's common law, federal, state, and statutory claims at law and in equity, claims so related to the claims within the original jurisdiction of this Court, that they form part of the same case or controversy under Article III of the U.S. Constitution, and they constitute acts within the scope of the same set of private transactions, and not in the public domain.

12.     Venue before this Court is proper pursuant to 28 U.S.C. 1391(b) as stated, in the Western Division of this Court, sitting in Los Angeles County, CA, which district has sufficient and minimum contacts with Defendants, due to the Defendants' RICK ROSS music and name use activities engaged in within this district, and this district is a principal place of business for the key Defendants.

13.     The applicable statutes of limitations have not expired, and claims made herein are brought within the Four(4) Year time period for limitations of actions under California law given Plaintiff's actual discovery of illegality, not discoverable sooner due to Defendant's lack of notice, and Ross' incarceration.

14.     At all times relevant hereto, Defendants were not authorized by Plaintiff, Ricky D. Ross a/k/a RICK ROSS, to use his name or identity for their commercial benefit, but despite a lack of consent, Defendant Roberts began to use the name RICK ROSS after 1995 when Plaintiff was sent to federal prison, for using his RICK ROSS name in "unlawful" commerce, from 1980 to 1995.

15.     In 1995, Defendant Roberts was a college freshman at Albany State U., GA who dropped out after a year then became employed as a full-time Dade County FL Corrections Officer in 1996 for almost 2 years, a fact Roberts denied publicly, when confronted by online urban media sites about his correctional officer past, and Roberts lied about being a C.O. until proof of his employment was produced, and Roberts misrepresented publicly he had a criminal past, false

and misleading representations of past facts likely to cause confusion, and deceive the public as to his affiliation with Plaintiff, who objected to Roberts' unauthorized use of his name and had lawyer letters sent to Def Jam in 2006 .

16.    In 2006, and all times relevant hereto, Def Jam was controlled by Chairman Antonio "LA" Reid" and then President Shawn Carter who conspired with Defendants to commercially exploit Plaintiff's name, and prior criminal image, for Roberts' benefit and use, and promoted William Roberts as "Rick Ross", by exploiting the name's commercial value with the Black, urban crime, rap, entertainment "public" and investing millions in RICK ROSS' name which brought attention to Roberts and  helped to establish him as "RICK ROSS" the rising star, after Def Jam/UMG outbid other music labels to sign Roberts to his big record deal, and in furtherance of their contract, Def Jam/UMG intentionally, maliciously in bad faith infringed on and misappropriated Plaintiff's name and image, because Def Jam and UMG financed Roberts' use of Plaintiff's name, and falsely represented Roberts as RICK ROSS, ex-drug dealer turned rapper.

17.  In 2006, Defendant Roberts was signed to his major record deal by Def Jam/UMG and Jay-Z, based on the buzz of his hit record "Hustlin", about Roberts being a major drug dealer named "RICK ROSS", which multi-million dollar investment reaped huge profits for Defendants and made Roberts a music star, but Defendants' marketing Roberts as Rick Ross, ex-drug dealer, was false.

18.     Roberts is now known as rapper and businessman RICK ROSS because he stole Plaintiff RICK ROSS' name and drug dealer identity, and persona, by using "Rick Ross" as his name in commerce and  entertainment, because of its popularity in Black crime, community, rap and urban media circles, but Defendants unlawfully used Plaintiff's name without consent as Roberts' name in music and in commerce, confusing and deceiving the public about Roberts' alleged or possible affiliation with Plaintiff, that didn't exist.

19.     Plaintiff Ricky D. Ross, a/k/a "Rick Ross", was the reputedly former major West Coast drug dealer from Los Angeles, CA, who allegedly made his name in the illegal drug trade in the urban communities of CA, and other major US cities, in the 1980's and 1990's, reportedly creating a major drug enterprise, and amassing illegally millions of dollars, before his arrest, prosecution and incarceration in 1995 by federal authorities, and Plaintiff's exploits and reputation earned him celebrity status and instant name recognition as a Black inner-city crime legend amongst his peers, the "urban crime" public and law enforcement, and as a result Plaintiff's story became nationally known when he was linked to the CIA's "Iran-Contra" international political scandal involving the U.S. military, corrupt foreign governments, drug cartels, guns, wars, and politics, during President Reagan/Bush administrations, that led to a congressional investigation by Rep. Maxine Waters into the import of drugs and

guns to poor U.S. urban communities from Asia, and South America, resulting

in the infamous testimony of U.S. Colonel Oliver North, and media expose' by

the late Gary Webb, about the CIA's involvement in 'America's drug war'.

20.     Plaintiff Ricky D. Ross a/k/a "Rick Ross" continuously and openly

used his real family name and his nickname Rick Ross, even while he allegedly

engaged in criminal actions up to 1995, and his name was used interchangeably

with Freeway Ricky Ross, and he still uses the names daily, and has used them

all in commerce in regards to the 2001 movie about his life "100 KILOS", and

in his current occupation as a motivational speaker to youth, ex-offenders, and in

entertainment matters since 1996, when his lawful name use in commerce began,

and Plaintiff's name has gained value and goodwill since 1995 when he was sent

to federal prison, and Defendants exploited Plaintiff's name for its good l value.

21.     Defendants wrongfully appropriated and exploited Plaintiff's name

for its criminal, entertainment and commercial value, because the RICK ROSS

name as known in rap music and Black criminal culture, law enforcement in and

around urban America, is famous and known by millions of people nationwide.

22.     At all times relevant hereto, Defendant Shawn Carter represented

that he was a drug dealer in the 1980's and 1990's before becoming a major top

rap artist, and he talked about his drug dealing past on TV and records, and as

President of Def Jam by 2006, Carter knew or should've known about or been

aware of Rick Ross and his crime story, his past reputation for being a major kingpin from LA, and popularity in the Black community in the 1980s and 90s, and Black Entertainment TV series called "American Gangster" chronicled the story of "Freeway Rick Ross", then Carter released an album titled "American Gangster" after the movie by that name and TV project aired nationally on BET.

23.    In 2006, Carter individually, and as President of DEF JAM, helped Def Jam secure the musical services of Defendant Roberts and signed him to his major deal, and in 2006, Jay-Z publicly stated that "Rick Ross' signing was one of his top priorities at Def Jam", since Def Jam was historically rap music's top grossing label, but by 2006, Def Jam's portfolio of top-selling rap artists had diminished, and Def Jam had fully diversified its artist portfolio with non-rap artists like NeYo and Rihanna amongst others, but Def Jam needed a rap hit.

24.    Def Jam and Universal made a major commercial investment in Defendant Roberts, under the name "Rick Ross", which Defendant Carter fully supported by signing Roberts for millions after a bidding war, making Roberts Def Jam's top 2006 rap project and proving Shawn Carter's value as a successful corporate music business executive, for which Shawn.Carter received executive compensation, bonuses, and/or stock options, as a result of his successful work on the "Rick Ross" project while he was President of Def Jam, which bonuses and compensation Plaintiff herein is demanding a just share of as his damages.

25.   Defendants Def Jam and/UMG knew, or should've known, to clear the RICK ROSS name for use because the name was popular in Black crime, rap and drug culture circles and in 2006, a pre-show trailer for Black Entertainment Television network cable series "American Gangster", featuring Plaintiff RICK ROSS' story on the show, was released nationally in the mainstream media, yet Defendants, Def Jam /UMG never contacted Plaintiff about his name, and chose to finance Roberts' illegal exploitation and wrongful misuse of Plaintiff's name.

26.   Defendants Def Jam Recordings and UMG knew, or should've known, that they had an ethical, legal duty to investigate the legality of using Plaintiff's name in commerce, as they planned to use RICK ROSS' name to promote Roberts, before investing millions in the name, but they violated their fiduciary and legal duty to clear use of the name, and  Defendants unlawfully engaged in commerce, and wrongfully exploited RICK ROSS' name knowing they had no consent, directly causing financial harm to Plaintiff by said use.

27.   Defendants DEF JAM and UMG Recordings, Inc. intentionally violated their fiduciary duty of care owed to intellectual property rights holders, the public, and Plaintiff, by using Rick Ross's name in commerce, and refusing to respond to Plaintiff's lawyer's letters objecting to unlawful use of his name while Plaintiff was in prison in 2006, and Def Jam avoided three 2006 letters from Plaintiff's attorney giving Def Jam notice of  Plaintiff's objections to use.

28.     Defendants branded Roberts Rick Ross anyway using Plaintiff's name and identity in the rap music industry, the Black community, and urban crime public, and they used Roberts' false drug dealer image with Plaintiff's name in commerce and caused Plaintiff irreparable harm, and they continue to cause harm to Ross' name, not limited to past, present and future economic loss but including mental and emotional harm, confusion, dilution, and diminished capacity to use his name.

29.     Defendants dominated the use of Plaintiff's name while he was in prison, from 2006 until the present, although Plaintiff hired a lawyer to contact Defendants regarding their use of his "Rick Ross" name and image in the rap music industry without his consent, which letters the lawyer sent but Defendant Def Jam never responded to in October-November, 2006 and Defendants actions and omissions have caused irreparable harm to Plaintiff and to Plaintiff's name.

30.     Plaintiff's filing attorney sent Def Jam and UMG a May 19, 2010 "cease" letter, with a "litigation hold" notice of potential litigation, under Rule 26, Federal Rules of Civil Procedure, based on Plaintiff's actual discovery of Defendants' unlawful conduct as individuals and/or in their corporate capacities and Defendants' past and present infringement and future intention to infringe upon Plaintiff's name, but Def Jam and UMG never responded to Plaintiff's May 19, 2010 letter, just as in 2006 Defendant Def Jam never responded to

California attorney Crystal Miller O'Brien letters sent to Def Jam's New York office to put Def Jam on notice of Plaintiff's objection to Defendants' name use in 2006, and Defendants continued their unlawful name use and false misrepresentations, engaging in willful and malicious legal misconduct.

## COUNT I  -  COMMON LAW AND FEDERAL TRADEMARK AND TRADENAME INFRINGEMENT
**Plaintiff v. Defendant Roberts and all Defendants individually and jointly**

31.     Plaintiff Ricky D. Ross a/k/a "Rick Ross" incorporates by reference all the prior averments made in Paragraphs 1 through 30, as if set forth at length.

32.     Plaintiff Ricky D. Ross a/k/a "Rick Ross" is the original and lawful owner of his birth name and his abbreviated and trademark nickname Rick Ross, which is the real name he has always used his entire life, first as a young tennis player, and in his past criminal life allegedly as an illegal drug trafficker, and he continued to use his Rick Ross name after his 1995 imprisonment to the present, and he's generally known as Rick Ross, Ricky Ross, and Freeway Ricky Ross.

33.     Under US federal trademark law at 15 U.S.C. Section 1051 et seq. 1127(a), a trademark is defined, in relevant part, as "any word, **name**, symbol, device, or any combination thereof, used to identify and distinguish his or her goods… from those… sold by others and to indicate the source of the goods even if the source is unknown…" and trademarks need not be registered but they must be used "lawfully" in commerce to be afforded Lanham Act protection.

34.    A trade name is defined in common law and 15 U.S.C. 1127 as "any name used by a person to identify his or her business or vocation…" and Plaintiff used his name in commerce but unlawfully as a major drug dealer from 1980 to 1995 and his  name was well known in the drug trade and by law enforcement and segments of the urban crime, rap and Black community because he did business as Rick Ross, until he was arrested, prosecuted, and incarcerated in federal prison, but in 1999 in prison, Plaintiff first used his name lawfully in commerce  regarding the   "100 KILOS" movie.

35.    Plaintiff Ricky D. Ross a/k/a "Rick Ross" is sole owner of his trade name and his unregistered trademark which is his nick name,  Rick Ross, and Plaintiff's trademark and trade name has acquired a secondary meaning, since it is clearly identified with his past life as an alleged major drug dealer, and such secondary meaning is proven from use of  his name in commerce and interstate drug prosecutions in federal and state criminal courts and formal congressional hearings into drugs and crime in American cities in the 1980's and 1990's, but since said use in commerce wasn't 'lawful' Rick Ross' first lawful name use in commerce was the 1999 movie "100 KILOS", and a copy of its 2010 purchase data is attached hereto for website www.amazon.com at Exhibit 1 (two pages).

36.    A personal name can be protected as a trademark if it acquires a secondary meaning, and Plaintiff Rick Ross' name acquired secondary meaning.

37.    Plaintiff established his RICK ROSS trademark and trade name by engaging in unlawful drug commerce in California from 1980 to 1995, and after 1995,  Plaintiff no longer engaged in unlawful commerce, and he used his name lawfully in commerce from 1995 to the present, and in February, 1999, he used his name formally and lawfully in commerce by authorizing and licensing its use in a major movie about his life under his name Ricky Ross, his first lawful use in commerce after being incarcerated since 1995 which trumped his unlawful uses.

38.    Plaintiff was reportedly known in Los Angeles law enforcement and criminal circles as a major drug kingpin until 1995, and amongst his peers, Ross established his real name as his trade name in commerce for more than fifteen (15) years, long before Defendant Roberts misuse and ten years before Defendants' 2006 use, and Ross used his trademark and  name competitively and in commerce, years prior to Defendants using his name to create the false character and rap identity that Defendant Roberts developed and named after Plaintiff, and Plaintiff "Rick Ross" never granted,  assigned or licensed, use of his name, trademark or identity in commerce, to any of the Defendants.

39.    Use of a mark in interstate commerce, in a manner which is likely to cause confusion to the public, as to origin or source of goods or services, gives rise to an action for trademark infringement, and Defendants' uses of Plaintiff's name in music is likely to cause confusion to the public, as to the

origin and/or source of entertainment services, and Defendants' unlawful uses gives rise to trademark infringement actions against Defendants for wrongful uses of Plaintiff's name, and Defendants as named, and unnamed Defendants, who acted in concert with each other or Roberts, unlawfully used, exploited and fraudulently used Plaintiff Rick Ross' name, image and reputation for the value associated with Rick Ross' name, in commerce, and as a direct result of such un-lawful use, Defendants are liable to Plaintiff, for willful violations of Plaintiff's trademark and name, and Plaintiff seeks Lanham Act protections and damages.

40.    A trademark owner can only prevent others from using his mark in commerce by proving such use is likely to mislead the public as to the source or origin of goods or services in commerce, or prior use in commerce, and Plaintiff alleges Defendants and Roberts actions misled and confused the public as to the source or origin of services in commerce, which source and origin was Plaintiff.

41.    By 2001, after Defendant Roberts was a college student and after he left the correction officer job in 1998, while Plaintiff Ricky D. Ross a/k/a "Rick Ross" was incarcerated for his illegal drugs activities in interstate commerce, Defendant Roberts allegedly began claiming, using, and unlawfully exploiting and misappropriating Plaintiff's Rick Ross name, using Plaintiff's name **and** "drug dealer" image as his "rap" name, and Roberts used  the name to exploit the name's commercial  value in the rap music industry, and assimilated Ross.

42.     Plaintiff's common law, federal trademark and "Rick Ross" trade name was infringed upon and violated by Defendant William Leonard Roberts, II, who trades as, did business as and performed as the ex-drug dealing rapper named Rick Ross, fraudulently with intent to knowingly deceive the public about his true non-drug correctional and law enforcement background, and Defendants joined the scheme by bankrolling him using Roberts' false Rick Ross name and image in commerce, which name was well known in criminal, drug and law enforcement circles that Defendant Roberts either knew of, worked in, or could have learned about while in college, in the rap music culture that emulates and idolizes urban criminals and dealers, in the Black community, or from his correctional officer employment in 1996, or any time thereafter when Plaintiff was in prison, but his name was in the news.

43.     Defendant William Leonard Roberts, II individually, and all the Defendants, acted to intentionally use and infringe upon, control, exploit and manipulate Plaintiff's trademark and name in commerce for their sole benefit and Plaintiff's detriment and injury, knowingly, willfully and in bad faith.

44.     Beginning in August, 2006, Defendant Roberts by and/or through his attorneys, attempted to register with the U.S. Patent and Trademark Office (USPTO) by filing an application for registration of a mark, the "RICK ROSS" name three (3) times, then tried it again January 14, 2009, using RICK ROSS'

CV-127 (09-09)

name with his silhouetted facial image in black with a beard, moustache and shaded glasses on white, three (3) more times, for a total of six (6) attempted registrations, however none of Defendants' attempted "RICK ROSS" registrations were approved by the USPTO after a final refusal of the "name" registrations by the USPTO, and an initial refusal of the most recent 2009 name and image registrations but no final determination.  A copy of the "USPTO TESS Search Results" for "RICK ROSS", pages 1 thru 21, have been attached hereto and incorporated by reference herein, as Plaintiff.'s Exhibit "A".

45.    Defendant Roberts and the named Defendants who signed Defendant Roberts to his major record deal early in 2006 should've known about trademark applications filed by or for Defendant Roberts or participated jointly in Roberts' attempt to register Plaintiff's name as Roberts' trade name, which conduct was intentional, tortious, malicious, sinister, and done in bad faith with full knowledge of law, and such conduct, after the USPTO's initial refusal to approve registrations of the name, shows there was willful infringement that invokes Lanham Act damages.

46.    Defendants have continued their unlawful misuse and they must be stopped  from infringing upon Plaintiff's rights by this Court, and now Plaintiff is actively using his name for good and lawful reasons in entertainment, sports and at-risk adult, youth and ex-offenders counseling activities in urban America.

47.    Plaintiff Rick Ross did not register his common law or federal trademark or trade name, but Plaintiff lawfully used his name in commerce beginning in 1999, while Plaintiff was still in prison, and his name and trademark "RICK ROSS" was used first in commerce "lawfully" after 20 years of unlawful use in commerce, in 1999, as Plaintiff authorized commercial release of "100 KILOS", a major movie. A copy of the countersigned Movie Release is attached hereto as Exhibit "B".

48.    Plaintiff establishes that he was known by his real name Rick Ross, and known by law enforcement in California in the 1980's and 1990's, prior to and after his 1995 incarceration, and Plaintiff has a common law and federal trade name and trademark lawfully used in commerce, that is protected by law.

49.    By filing a trademark application, Defendant Roberts had direct knowledge of a potential trademark dispute and intentionally acted to assert a lawful claim to Plaintiff's name, which claim was rejected by USPTO refusal.

WHEREFORE Plaintiff demands judgment against Defendants William Roberts, Carter, DEF JAM, UNIVERSAL MUSIC GROUP and Slip-N-Slide,. in excess of $10,000,000.00 exclusive of interest, court costs, attorneys' fees, compensatory, punitive, statutory, and treble damages in 15 U.S.C. Section 1117(b) or (c) retroactive to October, 2006, other injunctive, equitable relief preventing Defendants from use of Plaintiff's name in commerce, 1117(d)

domain name damages, asset freeze on Defendant Roberts royalties, prohibit

Defendants' release of 2010 music projects in RICK ROSS name and a 1117(a)

formal accounting of Defendants' profits for willful infringement of trademark.

## COUNT II – FEDERAL LANHAM ACT, 15 U.S.C. SECTION 1125(a), a/k/a SECTION 43A

### Plaintiff v. Defendant Roberts and all Defendants individually and jointly

50.     Plaintiff Ricky D. Ross a/k/a "Rick Ross" incorporates by reference the averments in Paragraphs 1 through 49 herein, as if fully set forth at length.

51.     Trademarks, protected under 28 U.S.C. 1338(a), when duly used in commerce, automatically accumulate goodwill and value from use of the marks on goods or in connection with services that distinguish the goods or services of an owner from anyone who subsequently or thereafter uses the same or similar mark or services.

52.     Trademark protection arises under the federal Lanham Act, 15 U.S.C. 1051, *et seq.*, and "Section 43A", 15 U.S.C. Section 1125(a), provides a federal cause of action, and gives protection, for infringement of an unregistered trademark.

53.     The distinctiveness of a trademark determines the level of protection it will be afforded, and distinctive, descriptive personal names like RICK ROSS are only protected in trademark law if they acquire a "secondary meaning" beyond the original merely descriptive meaning associated with

CV-127 (09-09)

goods, services, or a source in the mind of consumers or the public, and a secondary meaning of "drug dealer" attached to the RICK ROSS name, and that "drug dealer" secondary meaning is what Defendants exploited when they misused RICK ROSS' name.

54.     Section 43A of the Lanham Act provides, in relevant part, that "any person who, on or in connection with any goods or services, or on any container for goods, uses in commerce any word, term, **name**, symbol...or any combination thereof, or any **false designation of origin, false or misleading description of fact, or false or misleading representation of fact,** which-(A)is **likely to cause confusion or cause mistake, or to deceive** as to the **affiliation, connection or association** of such person with another person, or as to the **origin, sponsorship or approval** of his or her **goods, services or commercial activities** by another person, or (B) **in commercial advertising or promotion, misrepresents the nature... qualities, or... origin of another person's goods, services, or commercial activities,** shall be liable in a civil action by any person who **believes that he...is.. or is likely to be damaged by such act.",** and 43A infringement is a "strict liability" action.

55.     Section 43A of the Lanham Act does not require the registration nor formal existence of a trademark in order for its protections to apply, and 43(A), **"any name..., false or misleading escription...or...representation of fact...**

to cause confusion… mistake or to deceive as to the **origin, sponsorship or approval of his or her goods, services or commercial activities",** applied to Defendants' Def Jam and UMG, their actions, and more directly to Defendant Roberts, who used the Plaintiff's name RICK ROSS in commerce, in false and misleading misrepresentations of fact regarding Roberts' past life, which were confusing, and deceived as to Roberts' origin, sponsorship and association with Plaintiff**,** which violated Lanham Act 43(A) by wrongful actions of Defendants Roberts, DEF JAM, UMG, Slip-n-Slide and Carter, each of whom advertised, financed, and promoted Roberts' music projects and  misrepresented the nature, qualities and origin of Roberts' activities, by using his false criminal image in commerce they stole from Plaintiff's real criminal image, making Roberts and Defendants strictly liable for harm caused under the Lanham Act, and 43A.

56.    Defendants' intentionally engaged in unlawful, tortious conduct, under Section 43A, and Defendants' knew that they had NO rights to use the Plaintiff's name after they could not successfully register any trademark in Plaintiff's Rick Ross' name, but Defendants continued their unlawful use with knowledge that they lacked permission from the USPTO to use the Rick Ross name in commerce, and said Defendants plan to continue their unlawful use of Plaintiff's name in commerce in 2010 on Roberts' new album, increasing the likelihood of unlawful and willful infringement under 15 U.S.C. 1117.

57.     Defendants have intentionally deceived the public, and knowingly misrepresented Roberts falsely to the public as an ex-drug dealer with a criminal past, largely gained from his perceived affiliation, connection and/or association with Plaintiff, when in fact Roberts had a law enforcement past, and his falsely criminal image came from him using Rick Ross' name, which gave Roberts new credibility in rap and helped sell his music, because often in rap music, prior to the success of Eminem and Kanye West, rappers claimed criminal backgrounds that they survived before rising to success, but Def Jam & UMG's advertising of Roberts as a former criminal like Plaintiff, was false, misleading and deceptive.

58.     A likelihood of confusion exists concerning Defendants' usage of Plaintiff's name on Roberts under the Section 43A of the Lanham Act, because Plaintiff's name was and is strongly established publicly in the Black and crime community, Plaintiff's birth name and the infringing Rick Ross name are very similar, both parties promote and use this name in entertainment, Defendants' entertainment uses conflict with Plaintiff's, and evidence of actual confusion exists in the media, regarding the use of the RICK ROSS name in commerce.

59.     Defendants' use of the Plaintiff's name created the substantial likelihood of confusion between Plaintiff and Roberts use, because Plaintiff's trademark or trade name was established for over 20 years in Black and urban crime circles by 2006, similarity between Plaintiff's name and name used by

Defendant Roberts, was almost identical,  both names were used in a similar way for their criminal affiliation and reputation in Black community, crime and rap music segments of the "public" and both parties are and were in entertainment, so a likelihood for confusion is greater since Plaintiff is actively promoting his life story and new movie deal, and actual name confusion already exists, so much so that Plaintiff has to refer to himself publicly in entertainment circles, and on the Internet, as the "Real Rick Ross", to distinguish his activities from Defendant Roberts', who dominates the use of the "RICK ROSS" name in entertainment and on the Internet, because of the big money invested in the "RICK ROSS" name brand by Defendants and their false advertisement and misrepresentations about use of the name RICK ROSS by the Defendants who have convinced and induced segments of the public to buy the rapper Roberts' goods or services as RICK ROSS, because they are confused about  who's who.

60.    Defendants Def Jam, UMG and Slip-n-Slide Records knew, or should have known, about Defendant Roberts' attorneys' USPTO trademark registrations filings, because by 2006, Roberts was under contract to Def Jam, and Slip-n-Slide Records was furnishing Roberts' music services to Def Jam and UMG under music contracts, and Def Jam had to report trademark matters to its distributor UMG, thus Def Jam and Universal were just as culpable, and willful in their wrongful misconduct as was Defendant Roberts and all with knowledge.

61.     Plaintiff, by virtue of his criminal reputation, was considered a famous celebrity in Los Angeles, CA in the 1980's and 1990's, and in criminal and law enforcement circles nationally, his name was famous and well known by 1996, and by 2001, Plaintiff was the subject of a movie in commerce entitled "100 KILOS" and he's still well known or famous and it's a major media figure.

62.     Personal names as marks only acquire secondary meaning, and get trademark protection, when they refer to a provider of goods or services, and Plaintiff "Rick Ross" was a provider of goods, illegal drugs, and services, for the period of his involvement in unlawful commerce, and his "public" knows he was associated with drug activities in the past, and Defendants capitalized on the "RICK ROSS" name's value in the Black, urban crime, law enforcement and rap music culture, and profited off of Plaintiff's name while he was in prison, to unjustly enrich themselves, and William Roberts, in commerce and in rap music, but Defendants' unlawful actions caused confusion in the minds of the "public", as to Defendant Roberts' past affiliation with Plaintiff, when in fact no affiliation existed between Plaintiff and Defendant, and thus Defendants have confused the "public", and intentionally deceived the public about his correction officer past.

63.     Defendants carried out a planned, large scale scheme of deceptive advertising, for purposes of capitalizing on the value of Plaintiff's name which was being used by Defendant Roberts as his rap name, to help "publicly" sell

CV-127 (09-09)

Roberts' rap records, and Defendants made knowingly false and misleading statements about Roberts and made false advertisements about Roberts being an ex-drug dealer like Plaintiff, to benefit from the goodwill associated with Rick Ross' name and past identity, and Defendants' deceptive advertising worked to successfully get the public to purchase Roberts' records in the mistaken belief that he was an ex-drug dealer and a "bad guy" who rose from crime, to rapper.

64.     Under 15 U.S.C. 1125(a) of the Lanham Act Plaintiff is entitled to relief for false endorsement at 15 U.S.C. 1125(a)(1)(A), and false advertising, under15 U.S.C. 1125(a)(1)(B), and Defendants violated both sections and committed a false endorsement by causing confusion using Rick Ross' name in commerce, and false advertising by claiming Roberts was an ex-drug dealer named "Rick Ross", a materially and deceptive statement made in interstate commerce that harmed Plaintiff Rick Ross by false, deceptive advertising..

65.     Plaintiff has met his burden of proof that he has probable cause to prosecute this trademark claim on false endorsement/false advertising grounds.

WHEREFORE, Plaintiff demands judgment against Defendants under the Lanham Act, and for half of the unlawful profits from Defendant Roberts' music projects, and under Section 43A for confusion from Defendants unlawful use of Plaintiff's name on or with Defendants' false or misleading advertising and endorsements, for all Lanham Act 15 U.S.C. Section 1125(a)(1)(A) and

1125(a)(1)(B) statutory remedies not in excess of $10,000,000., exclusive of interest and costs, attorneys' fees, and compensatory, punitive, and treble damages under 15 U.S.C. Section 1117(b), retroactive, statutory damages for Defendant's wrongful profits not duplicative of actual damages, a temporary restraining order under 15 U.S.C. Section 1116 to prevent Defendants from using the subject name in any way pending a Court Order, precluding the release and/or sale of music products under the name "RICK ROSS", and if the Court determines infringement was willful, a permanent injunction on Defendants for using Plaintiff's name, a declaratory judgment awarding Plaintiff sole rights to exploit or use RICK ROSS' name in commerce, a seizure order to authorize and compel seizure of infringing RICK ROSS albums if released in violation of any injunction, associated business records and material used in the infringement from 2006 to the present, all related to ads, albums and products bearing the RICK ROSS name under 15 U.S.C. 1125.

## COUNT III – FEDERAL LANHAM ACT – 15 U.S.C.SECTION 1125(c)
## a/k/a SECTION 43(c)

66.    Plaintiff Ricky D. Ross a/k/a "Rick Ross" incorporates by reference all the averments in Paragraphs 1 through 65 herein as if fully set forth at length.

67.    Plaintiff established an unregistered trademark in his "RICK ROSS' name because of his name's "drug dealer" secondary meaning, and Plaintiff's RICK ROSS trademark is distinctive, famous, and should be granted protection.

68.    As of January 16, 1996, a provision was added to the Lanham Act, at 15 U.S.C. Section 1125(c), which protects "famous" marks from *dilution of their distinctiveness*" regardless of any '*likelihood of confusion*', and it states:

> "the owner of a famous mark shall be entitled, subject
>
> to the principles of equity and upon such terms as the
>
> court deems reasonable, to an injunction against
>
> another person's commercial use in commerce of a
>
> mark or trade name, if such use begins after the mark
>
> has become famous and causes dilution of the
>
> distinctive quality of the mark, and to obtain such relief
>
> as is provided in this subsection…"

and by 1996, Plaintiff's RICK ROSS name was already famous.

69.    Defendant Roberts and the other Defendants diluted the Plaintiff's "famous" mark, which is the Plaintiff's RICK ROSS name, by their unlawful acts in interstate commerce beginning 2006, as defined by any use of a similar mark which results in the lessening of the capacity of a famous mark to identify its goods or services, which Plaintiff's famous name Defendants lessened in capacity by the unlawful commercial use of the name and its value, and thus Defendants diluted and blurred the RICK ROSS name by criminally exploiting its entertainment value in commerce and in the music business,.

70.     Plaintiff's name was diluted by Defendants based on the Federal Trademark Dilution Act of 1995, because Defendants knew Plaintiff's RICK ROSS name was a "famous" one, and Defendants used the name because of its famousness among rap, Black community, urban crime and law enforcement public and the growing prison community which all number in the millions of U.S. citizens, and Plaintiff has been the subject of two movies, a BET national documentary, he is mentioned in popular rap songs, he is friends with many "rich and famous" Hollywood celebrities, and he got his notoriety from his past criminal life, unlike Defendant Roberts, who formerly a correctional officer, has falsely claimed to be a criminal, and used RICK ROSS' name to attract public attention and a reputation in rap,  and Plaintiff claims Defendants wrongfully diluted the value of his name.

71.     Defendants falsely advertised Defendant Roberts as RICK ROSS intentionally and under the Federal Trademark Dilution Act, Lanham Act Section 43(c), engaged in intentional, willful infringement of Plaintiff's trademark, trade name "RICK ROSS", and Defendants diluted the value and distinctiveness of Plaintiff's famous name.

WHEREFORE, Plaintiff demands judgment against Defendants under the Lanham Act, and for half of the unlawful profits from Defendant Roberts' music projects, and under Section 43A for confusion from Defendants unlawful use of

CV-127 (09-09)

Plaintiff's name on or with Defendants' false or misleading advertising and

promotion and for all Lanham Act anti-dilution violations under 15 U.S.C.

Section 1125(c) a/k/a 43(c), in excess of $10,000,000.00, exclusive of interest

and costs, attorneys' fees, and compensatory, punitive, and treble damages under

15 U.S.C. Section 1117(b), retroactive, statutory damages for Defendant's

wrongful profits not duplicative of actual damages, a temporary restraining order

under 15 U.S.C. Section 1116 to prevent Defendants from using the subject

name in any way pending a Court Order, precluding the release and/or sale of

music products under the name "RICK ROSS", and if the Court determines

infringement was willful, a permanent injunction on Defendants for using

Plaintiff's name, a declaratory judgment awarding Plaintiff sole right to exploit

or use his RICK ROSS name in commerce, a seizure order to authorize and

compel seizure of infringing RICK ROSS merchandise and associated business

records and materials to be used in the infringement in 2010 up to the trial, and

especially related to ads and albums bearing the RICK ROSS name under 15

U.S.C. 1116(d), an asset freeze against intentional infringer Defendant Roberts

to take a formal accounting of gross earning by Defendant Roberts from use of

RICK ROSS' name, production of each Defendant's book and records regarding

past "RICK ROSS' album projects "Port of Miami", "Trilla" and "Deeper Than

Rap" and royalties for each project, and all of Defendant Roberts pre and post-

2006 publishing records, and other reasonable injunctive relief, and/or in the alternative, statutory damages in 15 U.S.C. Section 1117(c) up to the maximum award of $2 Million for willful misconduct under Section 43A of the Lanham Act, and for dilution of Plaintiff's "famous" mark and trade name "RICK ROSS" pursuant to 15 U.S.C. Section 1125(c).

## COUNT IV – UNFAIR COMPETITION UNDER  LANHAM ACT, CALIFORNIA STATUTORY LAW,  AND IN EQUITY

### Plaintiff v. Defendant Roberts and Defendants individually and jointly

72.     Plaintiff Ricky D. Ross a/k/a "RICK ROSS" incorporates by reference all of the averments in Paragraphs 1 through 71 herein as if fully set forth at length.

73.     Unfair competition arises under the federal Lanham Act's 15 U.S.C. 1125(a) and the touchstone of unfair competition in 1125(a) Lanham Act claims is whether the Defendant's actions are likely to cause confusion in the mind of the public.

74.     Under 28 U.S.C. 1338(b) federal statutes, unfair competition is unlawful, and false advertising, or use of any false or misleading advertising to describe a person's goods or services, under 15 U.S.C. Section 1125(a)(i)(B) is unlawful.

75.     Defendants Roberts and Carter, knowing who the real RICK ROSS was in 2006, engaged in unlawful and unfair competition with the Plaintiff and

violated Plaintiff's name, and Defendants DEF JAM and UMG/Universal, who advocate publicly and in the media against trademark infringement, piracy and bootlegging in music and entertainment, wrongly engaged in unlawful and unfair competition with Plaintiff, misused his name, and maliciously engaged in numerous acts of unfair competition, for commercial gain.

76.    Defendants' use of false and misleading advertising to brand the Defendant William Leonard Roberts, II as RICK ROSS, in major magazine print ads, a Def Jam website, online, in television and radio ads, album releases, special events and in music industry conferences and awards show promotions, knowing that Defendant Roberts lacked legal rights to use RICK ROSS' name, was false and misleading, and such multi-million dollar false advertising actions constituted unfair competition under the law, irreparably harmed Plaintiff and prejudiced his rights regarding the past, present and future use of his name.

77.    Defendants initiated wrongful violations of Plaintiff's rights while Plaintiff Ross was in prison in 2006, and Defendants Def Jam and UMG openly promoted Defendant Roberts as RICK ROSS, and their financing, advertising and promotion of Roberts as RICK ROSS deceived and misled the public to believe that Roberts' and Defendants' Ross name use was lawful but it wasn't.

78.    Under "unfair competition" law, at 15 U.S.C. Section 1125, competing in a way which misleads the consumer into believing that another's

goods or services have the same source or origin as, or are sponsored by, or affiliated with, the Plaintiff's, is unlawful and constitutes unfair competition by false designation of origin, and Defendants competed in such a fashion, and misled the public into believing that Defendant Roberts was an ex-drug dealing criminal like RICK ROSS, when in fact Roberts came from a college and corrections background, not a life in any way affiliated with Plaintiff's life, and Defendants engaged in acts of unfair competition, that violated Plaintiff's rights under the Lanham Act, when Defendants were "passing off" Roberts as ROSS.

79.    Defendants Carter, DEF JAM & UMG/Universal took Defendant Roberts' illegal and unfair use of Plaintiff's name, prior to 2006, to a higher level given their support for and participation in Roberts' unlawful schemes, given the top respective significant positions they held in the entertainment industry because Defendants were major players in the music industry, Carter as a top artist and "Rocafella" label owner, Def Jam as a major music label, and UMG as a major worldwide distributor, when they signed Defendant Roberts to a major record deal in 2006 as "RICK ROSS", the public was falsely induced to believe that Roberts had a right to use RICK ROSS' name because Defendants Carter, Def Jam, and UMG promoted, marketed, used, sold, and otherwise misrepresented Defendant Roberts using the name "RICK ROSS" up to the present, the public was effectively deceived by their actions, and Defendants Carter, Def Jam and

UMG jointly engaged in a course of conduct, and a pattern of practices, that were intentionally deceptive trade practices, constituting unfair competition in the entertainment industry, for their joint commercial benefitting and Plaintiff's detriment and financial loss, and said Defendants directly caused confusion, and harm to Plaintiff's interest in his name by their successful branding of Roberts as RICK ROSS, and engaged in unfair competition in violation of the Lanham Act.

80.    By the sheer force of Defendants Carter, Def Jam & UMG's major economic and political power as the top artist and music companies respectively, the Defendants had an unfair advantage over Plaintiff, and superior advertising power in regards to the name, and they intentionally used their advertising power over Plaintiff to confuse the public and financially control the RICK ROSS trade name and helped Defendant Roberts accomplish their joint scheme to unlawfully control the RICK ROSS name, by investing millions of dollars in branding the name, with Roberts end Defendants benefiting from the branding, as Defendants acted in bad faith by using deceptive trade practices to brand Roberts Rick Ross.

81.    Defendants acted intentionally and with willful disregard for the Plaintiff's rights at all times relevant hereto, thus invoking a need for equitable remedies because adequate remedies will not be available at law given present, and future, substantial loss and irreparable harm caused Plaintiff by Defendants' promotion of Roberts as "RICK ROSS", which Defendants directly facilitated.

82.     Each Defendant on their own and in their own way engaged in acts of unfair competition with Plaintiff, and they each acted jointly with Defendant Roberts and/or other Defendants in their unlawful and concerted joint effort to achieve success with Defendant Roberts, by branding him as RICK ROSS for Defendants' joint commercial gain and to boost sales, plus Defendant Roberts engaged in unfair competition on his own against Plaintiff, and jointly with the financial backing of the Defendants, he succeeded in his master plan and scheme to be branded RICK ROSS and to get rich off of Plaintiff's name and identity, by engaging in unfair competition, in violation of Section 17500 of CA Business & Professions Code and the federal Lanham Act at 15 U.S.C..Section 1125.

83.     As established herein, Defendants received written notice from the attorney hired by Plaintiff, Crystal Miller O'Brien, that Plaintiff objected to their uses of his name I 2006, by letters dated October 5, 2006, November 15, 2006 and November 20, 2006, sent to Defendant Def Jam's Business Affairs/Legal Department and received, but which Def Jam never responded to, and the said lawyer's 2006 letters are attached hereto as Pf.'s Exhibits "C1", "C2" and "C3".

84.     The Defendants' wrongful use of Plaintiff's name, and fraudulent promotion of Defendant Roberts as "RICK ROSS", was willful, and violated common law, unfair competition, and equity, and the federal Lanham Act.

WHEREFORE, Plaintiff demands judgment in his favor against the

Defendants, for FIFTY PERCENT (50%) of each Defendant's gross earnings

from Defendant Roberts, and according to the federal Lanham Act and 28

U.S.C. 1338(b) unfair competition  Plaintiff seeks to enjoin all of the

Defendants, particularly Defendant Roberts, from violating Section 43A of the

Lanham Act at 15 U.S.C. Section 1125 (a), and the false advertising provisions

of the Act at 15 U.S.C. Section 1125(a)(i)(B), for no less than $10,000.000.00,

exclusive of interests and costs, plus attorney fees, compensatory, punitive and

treble damages under 15 U.S.C Section 1117, and retroactive actual damages

from Defendants' wrongful profit, not duplicative of actual damages, a

temporary restraining order under 15 U.S.C. Section 1116, that prevents

Defendants from releasing or using music under the name RICK ROSS until the

Court determines if the use is proper, and if the Court decides it improper, a

permanent injunction against Defendants, barring future use of the "RICK

ROSS" name, a seizure order to compel seizure of infringing RICK ROSS

merchandise and associated business records, and materials used in the

infringement at the start of the action especially albums and ads under 15 U.S.C.

1116(d), an asset freeze on intentional infringer Defendant Roberts, to determine

the extent of wrongful earnings obtained by Defendant Roberts and to compel a

formal accounting, a copy of each Defendant's book and records regarding the

RICK ROSS account for each of the album projects, including a copy of all "RICK ROSS" royalties and publishing statements or budgets, statutory damages in the alternative, 15 U.S.C. 1117(c), for the maximum statutory amount given Defendants' willful misconduct up to $2 Million for all Section 43A unfair competition violations, including the false designation of origin under 15 U.S.C. 1125(a)(i), and 15 U.S.C. 1119, Court Trademark Order.

## COUNT V – CALIFORNIA COMMON AND STATUTORY LAW, RIGHT TO PUBLICITY, AND PRIVACY

### Plaintiff v. Defendant Roberts and Defendants individually

85.     Plaintiff Ricky D. Ross a/k/a "Rick Ross" incorporates by reference the averments in Paragraphs 1 through 84 herein as if fully set forth at length.

86.     The right of publicity is a state-created intellectual property right that is based on the commercial use of one's name and likeness, and it is defined generally as the right of each person, to control, and profit from, the value of his or her name, likeness and identity, and protects individuals against unauthorized commercial appropriation, exploitation and use of names and likeness, allowing monetary recovery for the wrongful use or misuse of one's name or likeness.

87.     The elements of a right to publicity cause of action are that a said Defendant used Plaintiff's name as a symbol of "his" identity in a manner likely to cause damage to the commercial value of Plaintiff's reputation with the intent to obtain a commercial advantage from use of Plaintiff 's name without consent.