# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4528 PA (RZx) | Date | November 1, 2010 |
|---|---|---|---|
| Title | Ricky Ross v. William Roberts, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Paul Songco | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** IN CHAMBERS – COURT ORDER

Before the Court is a Motion to Dismiss filed by defendants William Leonard Roberts, II and Maybach Music Group (Docket No. 23). Defendants Shawn Carter (known professionally as "Jay-Z") and UMG Recordings, Inc. (including its division The Island Def Jam Music Group, erroneously sued as Def Jam Recordings, LLC) have filed Notices of Joinder in the Motion to Dismiss (Docket Nos. 25 & 26). Defendants challenge the sufficiency of the First Amended Complaint ("FAC") filed by plaintiff Ricky Ross ("Plaintiff"). Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. The hearing calendared for November 1, 2010, is vacated, and the matter taken off calendar.

Plaintiff, who, in addition to Ricky Ross, is also known as Rick Ross and "Freeway Rick Ross," was incarcerated beginning in 1995 for his role in running a major drug distribution enterprise during the 1980s and 1990s. Plaintiff was released from prison in late 2009. Defendant William Leonard Roberts, II ("Roberts") is a rap musician who performs professionally under the name "Rick Ross." Additional defendants Maybach Music Group, Def Jam Recordings, LLC, Island Def Jam Music, Shawn Carter (known professionally as "Jay-Z"), UMG Recordings, Inc., and Slip-N-Slide Records (collectively the "Corporate Defendants") are in one way or another responsible for the production and distribution of Roberts' recordings. According to the FAC, Roberts and the Corporate Defendants have infringed Plaintiff's intellectual property rights in the name "Rick Ross" by using the name to market Roberts and his music. In so doing, according to Plaintiff, Roberts and the Corporate Defendants have improperly capitalized on the notoriety and gangster credibility of Plaintiff's name to market Roberts' music.

Plaintiff alleges that in 2006, while he was still in prison, his lawyer sent cease and desist letters to Def Jam Recordings. The FAC alleges that defendants ignored Plaintiff's warnings and continued to use "Rick Ross" to promote Roberts' music. Approximately six months after being released from prison, Plaintiff's current lawyer wrote to Def Jam Recordings in May 2010 and requested that defendants cease using "Rick Ross" in connection with Roberts and his music. When Plaintiff did not receive a response to that request, he commenced this action and later filed the FAC as a matter of right. Plaintiff's FAC asserts claims for: (1) common law and federal trademark and tradename infringement;

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4528 PA (RZx) | Date | November 1, 2010 |
|---|---|---|---|
| Title | Ricky Ross v. William Roberts, et al. | | |

(2) false designation of origin in violation of the Lanham Act; (3) trademark dilution under the Lanham Act; (4) unfair competition under the Lanham Act and California law; (5) violations of Plaintiff's rights to privacy and publicity under California statutory and common law; (6) common law misappropriation of name and likeness under California common law; (7) fraud and fraudulent misrepresentation; (8) collusion and conspiracy to defraud; (9) tortious interference with business relations; (10) unjust enrichment; (11) negligence; and (12) equitable relief.

In the Motion to Dismiss, defendants challenge each of Plaintiff's claims. In his Opposition, Plaintiff has abandoned his claims for fraud, tortious interference, and unjust enrichment. Those claims are therefore dismissed with prejudice.

Generally, plaintiffs in federal court are required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). While the Federal Rules allow a court to dismiss a cause of action for "failure to state a claim upon which relief can be granted," they also require all pleadings to be "construed so as to do justice." Fed. R. Civ. P. 12(b)(6), 8(e). The purpose of Rule 8(a)(2) is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957)). The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6). See, e.g., Gilligan v. Jamco Dev. Corp. , 108 F.3d 246, 248–49 (9th Cir. 1997) ("The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim.") (internal quotation omitted).

However, in Twombly, the Supreme Court rejected the notion that "a wholly conclusory statement of a claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." Twombly, 550 U.S. at 561, 127 S. Ct. at 1968 (internal quotation omitted). Instead, the Court adopted a "plausibility standard," in which the complaint must "raise a reasonable expectation that discovery will reveal evidence of [the alleged infraction]." Id. at 556, 127 S. Ct. at 1965. For a complaint to meet this standard, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555, 127 S. Ct. at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1216, pp. 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (alteration in original)); Daniel v. County of Santa Barbara, 288 F.3d 375, 380 (9th Cir. 2002) ("'All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.'") (quoting Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S. Ct. at 1964–65 (internal quotations omitted). In construing the Twombly standard, the Supreme Court has advised that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4528 PA (RZx) | Date | November 1, 2010 |
|---|---|---|---|
| Title | Ricky Ross v. William Roberts, et al. | | |

conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

In seeking dismissal of Plaintiff's trademark claims, defendants contend that Plaintiff does not allege that he has used his name to identify the source of a good or service as is required for protection under the Lanham Act. Specifically, the Lanham Act defines a "trademark" as "any word, name, symbol, or other device, or any combination thereof . . . to identify and distinguish his or her goods [or services] . . . and to indicate the source of the goods [or services] . . . ." 15 U.S.C. §1127 (using the same language to define trademarks and service marks); see also Self-Realization Fellowship Church v. Ananda Curch of Self-Realization, 59 F.3d 902, 906 (9th Cir. 1995) ("Implicit in the concept of a trade mark 'is a requirement that there be direct association between the mark . . . and the services specified in the application, i.e., that it be used in such a manner that it would be readily perceived as identifying such services.'") (quoting In re Moody's Investor Serv., Inc., 13 U.S.P.Q. 2d 2043, 2047 (T.T.A.B. 1989)).

To obtain the benefits of protection under the Lanham Act, a personal name such as "Rick Ross" must have secondary meaning. See Cairns v. Franklin Mint Co., 107 F. Supp. 2d 1212, 1222 (C.D. Cal. 2000); see also 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 13-1 (4th ed. 2009). Secondary meaning occurs when "'in the minds of the public, the primary significance of a mark is to identity the source of the product rather than the product itself.'" Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 211, 120 S. Ct. 1339, 1343, 146 L. Ed. 2d 182 (2000) (quoting Inwood Laboratories, Inc. v. Ives Laboratories, Inc., 456 U.S. 844, 851 n.11, 102 S. Ct. 2182, 2187,72 L. Ed. 2d 606 (1982)); Cairns, 107 F. Supp. 2d at 1222 ("Although Princess Diana is certainly well-recognized for her humanitarian work and fund-raising, she is undisputably also well-recognized for her status as a member of the royal family, her role as a mother, and her image as a fashionable princess. A finding of secondary meaning in this case would mean that the words 'Diana, Princess of Wales' would no longer primarily identify the individual, Princess Diana, but instead identify plaintiffs' charitable activities. This is an absurd contention to say the least."). Only lawful activities can establish trademark protection. See CreAgri, Inc. v. Usana Health Sciences, Inc., 474 F.3d 626, 630 (9th Cir. 2007) ("But the inquiry does not stop with use in commerce. It has long been the policy of the PTO's Trademark Trial and Appeal Board that use in commerce only creates trademark rights when the use is lawful. . . . [W]e also agree with the PTO's policy and hold that only lawful use in commerce can give rise to trademark priority.").

In support of his trademark claims, Plaintiff alleges that "his name was well known in the drug trade and by law enforcement and segments of the urban crime, rap and Black community because he did business as Rick Ross, until he was arrested, prosecuted, and incarcerated in federal prison . . . ." (Complaint ¶ 34.) The FAC further alleges that "Plaintiff established his Rick Ross trademark and trade name by engaging in unlawful drug commerce in California from 1980 to 1995." (Complaint ¶ 37.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4528 PA (RZx) | Date | November 1, 2010 |
|---|---|---|---|
| Title | Ricky Ross v. William Roberts, et al. | | |

Because this illegal activity cannot be used to establish secondary meaning, such allegations do not provide support for Plaintiff having a valid trademark for his name.  See CreAgri, 474 F.3d at 630.

      Plaintiff attempts to bolster his claim for ownership of a valid trademark in his name by alleging that he has, on several occasions, authorized others to use his name and life story in motion pictures, including the film "100 Kilos," which was released in 2001.  See Complaint ¶ 37 ("[I]n February, 1999, he used his name formally and lawfully in commerce by authorizing and licensing its use in a major movie about his life under his name Ricky Ross, his first lawful use in commerce after being incarcerated since 1995 which trumped his unlawful uses."); see also Opposition 11:8-10 ("[T]he 'Rick Ross' name was used in commerce in the 1999 '100 Kilos' movie, lawfully, to identify Plaintiff's services, entertainment, and their source, his 'past criminal life'.").  Plaintiff's allegations and arguments concerning the use of his name in connection with "entertainment services" do not properly allege facts indicating any possibility that Plaintiff has used his name in commerce to identify the "source" of those services.  Cairns, 107 F. Supp. 2d at 1222.  As the FAC alleges, Plaintiff authorized others to use his name and life story to create the film "100 Kilos."  "Rick Ross" or "Ricky Ross" was used in that motion picture to identify a character with that name, not to identify the source of a good or service.  Moreover, as Plaintiff admits, whatever secondary meaning his name may possess comes from his past as a drug dealer, not from his provision of entertainment services.  See Opposition 8:5-12 ("Plaintiff has an unregistered trademark interest in his name 'Ricky Ross a/k/a Rick Ross' since his name acquired distinctiveness, or 'secondary meaning', beyond its merely descriptive meaning, and in the minds of consumers in his Black, rap sub-culture, urban Black crime culture community, his name 'Ricky Ross a/k/a Rick Ross' is associated with being a 'drug dealer' . . . .").

      Plaintiff has alleged facts, and made arguments, that destroy any possibility that he has any valid trademark rights in his name that have been violated by defendants.  As a result, Plaintiff's claim for trademark infringement fails.  See Applied Info. Science Corp. v. eBay, Inc., 511 F.3d 966, 969 (9th Cir. 2007) (holding that to establish a claim for trademark infringement, a plaintiff must show that "(1) it has a valid, protectable trademark, and (2) that [the defendant's] use of the mark is likely to cause confusion"); see also id. ("'The threshold issue in any action for trademark infringement is whether the words used by a manufacturer in connection with his product are entitled to protection.'") (quoting Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1014 (9th Cir. 1985)).  Because Plaintiff's trademark infringement and false designation of origin claims "are subject to the same test," Plaintiff's failure to plead viable trademark rights dooms his false designation of origin claim as well.  See Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 632 (9th Cir. 2008) (applying the "same test" to infringement and false designation of origin claims).  Similarly, Plaintiff's trademark dilution claim fails because it applies only to "the owner of a famous mark," and as the Court has already determined, Plaintiff cannot establish ownership of a valid "mark."  See 15 U.S.C. § 1125(c); see also Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1324 (9th Cir. 1998).  Finally, because Plaintiff cannot state a claim for trademark infringement or false designation of origin, his fourth claim for unfair competition under the Lanham Act also fails.  See Mattel, Inc. v. MCA Records, Inc., 296 F.3d 894, 907 (9th Cir. 2002) ("[T]he Lanham Act's protections extend to only two species of the generic tort of unfair

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 10-4528 PA (RZx) | Date | November 1, 2010 |
|---|---|---|---|
| Title | Ricky Ross v. William Roberts, et al. | | |

competition: infringement of registered trademarks, and false designation of origin. Thus, federal law does not prohibit a broad range of acts defined as unfair competition by the law of many states."); see also id. ("[W]e made clear in Toho that subsection 44(h) does not create a general law of unfair competition.") (citing Toho Co. v. Sears, Roebuck & Co., 645 F.2d 788, 790-92 (9th Cir. 1981)).

For all of the foregoing reasons, Plaintiff's federal trademark claims fail. Moreover, because the facts alleged by Plaintiff destroy any possibility that he could state a valid federal trademark claim, and Plaintiff has not explained how he could amend the FAC to cure the defects, the Court dismisses those claims with prejudice.

Having disposed of Plaintiff's federal trademark-related claims, all of the remaining claims alleged in the FAC assert claims based on state law. The Court has supplemental jurisdiction over these remaining law claims under 28 U.S.C. § 1367(a).[1] Once supplemental jurisdiction has been established under § 1367(a), a district court "can decline to assert supplemental jurisdiction over a pendant claim only if one of the four categories specifically enumerated in section 1367(c) applies." Executive Software v. U.S. Dist. Court for the Cent. Dist. of Cal., 24 F.3d 1545, 1555–56 (9th Cir. 1994). The Court may decline supplemental jurisdiction under § 1367(c) if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

Here, the Court has dismissed all of the federal claims over which it has original jurisdiction. Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. See 28 U.S.C. § 1367(c)(3). The Court therefore dismisses Plaintiffs' remaining claims without prejudice. Pursuant to 28 U.S.C. § 1367(d), in the event Plaintiff elects to file his state law claims in state court, this Order acts to toll Plaintiff's state law statute of limitations for a period of thirty (30) days unless state law provides for a longer tolling period.

IT IS SO ORDERED.

---

[1] Although the FAC alleges in conclusory fashion that the Court possesses jurisdiction based on both the existence of a federal question under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332, it is clear that the Court's jurisdiction is based solely on the existence of Plaintiff's federal trademark claims. Specifically, based on the allegations of the FAC, Plaintiff lives in Los Angeles County, which is the same county in which the FAC alleges that defendant UMG Recordings, Inc. maintains its principal place of business. As a result, Plaintiff has failed to establish completely diversity of citizenship between himself and defendants, and Plaintiff's reliance on the Court's diversity jurisdiction is improper.